IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CYNTHIA WEISENBERGER, individually
and on behalf of all others similarly situated,

Plaintiff,

vs.

AMERITAS MUTUAL HOLDING
COMPANY,

Defendant.

CASE NO: 4:21-CV-3156

**ORDER**

This matter is before the Court on the parties' Stipulation Regarding Production of Electronically Stored Information and Paper Documents. ([Filing No. 40](#).) The Stipulation is approved as set forth below.

## I.     INTRODUCTION

**a)**  Purpose.

This Stipulated Order ("Order") Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol Order") shall govern the parties in the above-captioned case whether they currently are involved or become so in the future (the "Action").

**b)**  Admissibility.

Nothing in this Order shall be construed to affect the admissibility of discoverable information. Pursuant to the terms of this Order, information regarding search process and electronically stored information ("ESI") practices may be disclosed, but compliance with this Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this Order will not be interpreted to require

1

disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, protection, or immunity from disclosure.  This Order is a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.  This Order is subject to amendment or supplementation by the parties.

       **c)** <u>Cooperation.</u>

The parties are aware of the importance the Court places on cooperation and commit to cooperating in good faith throughout the matter.

       d) <u>Authenticity.</u>

Nothing in this Order shall be construed to affect the authenticity of any document or data. All objections to the authenticity of any document or data are preserved and may be asserted at any time.

## II.    SCOPE AND LIMITATIONS OF PRESERVATION AND PRODUCTION OF ESI

The parties agree to take the considerations addressed in Fed. R. Civ. P. 26(b) into account for purposes of the preservation and production of discovery in this matter. Adopting a tiered or sequenced approach to electronic discovery may be appropriate, and the parties agree to continue to consider and confer about the most efficient processes as discovery proceeds.

The parties agree that they will engage in ongoing discussions regarding the appropriate scope and limitations of the discovery of ESI. The parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review, relevant date ranges, possible custodians that may have potentially responsive information, any obstacles to accessing and producing ESI, information demonstrative of adequate quality controls, and the timing of productions.

### III.     IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner.  Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.  The parties will meet and confer within a reasonable period of time after service of responses and objections to discovery requests regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (e.g., search terms, technology-assisted-review, predictive coding). The parties will discuss and, where possible, attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties.  The parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

a)  Sources

The parties will meet and confer within a reasonable period of time after service of responses and objections to discovery requests to disclose and discuss the custodial and non-custodial data sources likely to contain responsive information.  The meet and confer process will address any relevant electronic systems and storage locations.  The parties will also disclose and describe any document retention policies or practices (*e.g.*, retention schedules or policies, auto delete functions, routine purging, mailbox size limits), or other practices likely to impact the existence or accessibility of responsive documents or electronically stored information. The parties will identify and describe sources likely to contain responsive information that a party asserts should not be searched or are not reasonably accessible and will explain the reasons for such assertions.  The parties will disclose third-party sources, if any, likely to contain discoverable

information. The parties will retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and to meet and confer regarding such request.  If no agreement can be reached, the parties will seek Court guidance.

b)   Identification of Custodians

The parties will meet and confer regarding the identification and selection of custodians within a reasonable period of time after service of responses and objections to discovery requests.

c)   Easily Segregable Documents

If a producing party determines that certain documents are easily identifiable and segregable, that party may collect such documents without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review).  Where potentially responsive ESI are more appropriately searched through the use of search terms, the parties agree to follow the process identified below and the parties shall meet and confer regarding any proposed deviation.

d)   Search Terms

Certain discovery requests may be more aptly collected/responded to through the use of search terms If a producing party proposes to use search terms, those terms will be subject to negotiation between the parties.   The producing party will commence the negotiation process by providing a proposed list of search terms with an explanation of how search terms will be applied, a list of proposed custodians, and the time period or temporal scope of the documents that will be searched.

If the parties are unable to resolve a disagreement over search terms following a meet and confer, the producing Party will provide search term hit reports that show the number of hits for

both the producing party's proposal and the requesting party's proposal for each of the disputed

search terms for each document collection where the terms were applied, including the following:

(i) the number of documents with hits for that term; and (ii) the number of unique documents for

that term, i.e., documents which do not have hits for any other term.

If disputed terms still exist at the end of the meet-and-confer process, the parties will submit

the issue to the Court in accordance with the case scheduling order and the District of Nebraska

Magistrate Judge Civil Case Management Practices.

e)   Technology-Assisted-Review

A Party may use Technology Assisted Review ("TAR") to sort documents for linear

review.  If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI

subject to linear review, the parameters set forth in this Section shall apply. A producing Party

shall describe to a requesting Party the vendor and the TAR technology or tool being used,

including a description of the TAR tool's procedures, prioritization and training of the TAR tool,

as well as the precision and recall metrics that will be employed by the TAR tool.

A producing Party need not conduct any additional review of information subjected to, but

not retrieved by, its elected TAR tool as part of the identification of the subset of information that

will be subject to review and production.

## IV.     CONFIDENTIALITY, PRIVACY, AND SECURITY OF INFORMATION

a) **Confidential Information**.  The Protective Order, Filing No. 43, will govern the

treatment of information warranting confidential treatment.  Nothing contained herein shall

contradict the parties' rights and obligations with respect to the Protective Order.

b) **Specialized Treatment for PII and PHI.**  The prosecution and defense of this Action

will require the processing and review of ESI, including data containing Personally Identifiable

Information ("PII") and Protected Health Information ("PHI").  In the interest of addressing

privacy and security concerns, and in order to facilitate the processing and production of documents containing such data, the parties are prepared to discuss appropriate precautions and arrangements for reviewing such data, including, potentially, reviewing certain highly sensitive information maintained by the producing party on a dedicated document repository to be contracted for and managed by the producing party. The parties' discussions concerning the nature of information and data meriting this specialized treatment, the accessibility of this data, and the specific parameters to govern specialized review arrangements are ongoing.

c) **Privilege**.   Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs. Privilege logs shall be produced within a reasonable time of the document review and initial production by the parties. The parties will have an ongoing responsibility to update their respective privilege logs with subsequent production of documents, if necessary:

i.   Privilege logs will include the privilege claimed, a description of the nature of the document that will enable other parties to assess the privilege claim and designated objective metadata fields to the extent they contain information and the information is not privileged or protected.  Designated objective metadata fields are: Author, From, To, CC, BCC, Date, Email Subject, File Name, and File Extension.  Legal personnel shall be identified as such by adding an asterisk before or after their names in the privilege log.

ii.   A party shall only be required to include on the privilege log the most inclusive email in a chain with the same participants and discussing the same subject matter. Lesser included emails need not be separately logged provided they meet these criteria. If the participants or subject matter change in the course of the chain, a new entry shall be required on the privilege log.

iii.    Privilege logs need not include redactions from produced Documents, provided the reason for the redaction (such as "Redacted for Privilege," "Redacted for PII," or "Redacted for PHI") appears on the redaction label and the unredacted portion of the document contains content that allows other parties to assess the claim of privilege.

iv.    The parties are not required to log privileged communications or work product created after the filing of Plaintiff's initial Complaint.  Moreover, the parties agree that, as it pertains to Defendant's investigation of and response to the cybersecurity incident giving rise to Plaintiff's Complaint, Defendant may produce a categorical privilege log in lieu of a document-by-document privilege log.  Nothing in this Paragraph is intended to preclude negotiation of additional exclusions to reduce the burdens of privilege logging.

## V.    PRODUCTION SPECIFICATIONS

a) <u>Format</u>

The parties agree that attending to issues relating to form of production at the outset facilitates the efficient and cost-effective conduct of discovery. Appendix A sets forth technical specifications that the parties propose to govern the form of production of paper documents and ESI in this litigation, absent other agreement by the parties. Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). The parties agree to produce documents in PDF, TIFF, native and/or paper or a combination thereof as set forth in Appendix A. For good cause, a requesting party may request the production of documents in a format other than as specified in this Protocol. The parties shall thereafter meet and confer and the producing party shall not unreasonably deny such requests. The parties agree not to degrade the searchability of documents as part of the document production process. The parties also recognize that in some

instances where documents have been produced in a form other than native, subsequent production of the same documents in native form may be warranted for certain purposes.

    b)   <u>De-Duplication</u>

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.

A party may also de-duplicate "near duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate".

To the extent that deduplication is utilized, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial testimony.

    c)   <u>Searchable Format</u>

The parties share a desire to ensure that ESI is produced in an acceptable, searchable format.  To that end, the parties have discussed but have not yet identified potentially relevant ESI that would not be amendable to the proposed technical specifications.  The parties agree to meet

and confer in good faith to address any issues that may raise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

d) Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Appendix A, attached hereto.

e) Embedded Objects

Microsoft Excel (.xls) spreadsheets embedded in documents will be extracted as separate documents and treated like attachments to the document. The parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

f) Zero-Byte Files

The parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

g) Attachments

The parties agree that non-responsive parent documents must be produced if they contain a responsive attachment and are not withheld as privileged. Non-responsive attachments to

responsive parent emails need not be produced. A Bates numbered placeholder will be provided for any document withheld pursuant to this Section and shall state that a non-responsive attachment has been withheld from production.

h)   Compressed File Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

i)   Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production of the data that will allow the requesting party to use and search the data in a meaningful way and exchange information for this purpose, which may include information concerning the (a) database schema, (b) database schema standardized reports and queries, and (c) training manuals or standing operating procedures concerning operation and maintenance of the database.

j)   Exception Report

The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

k)   Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

l)   Redactions

10

If documents that the parties have agreed to produce in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

**IT IS SO ORDERED.**

Dated this 2nd day of August, 2022.

BY THE COURT:


s/ Susan M. Bazis
United States Magistrate Judge

11

## Appendix A

## Technical Specifications for Production

**1.      PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER**

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi. If not practical to produce in TIFF format, images should be produced in native format with a placeholder TIFF image stating that the document was produced natively.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- Media may be delivered on CDs, DVDs or External USB hard drives. Media may also be delivered using a secure FTP site. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- Each delivery should be accompanied by an image cross reference file that contains document breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

    Field Separator, ASCII character 020: """

    Quote Character, ASCII character 254 "þ"

    Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

- A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the document and the relative path to the text file for that document on the production media.

1

## 2.      PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS[1]

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as tiff images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the extracted metadata fields where they exist in the file being produced. (But nothing shall require the production of metadata that does not exist or would be unduly burdensome to collect.)
  - o   Beginning Production Number
  - o   Ending Production Number
  - o   Beginning Attachment Range
  - o   Ending Attachment Range
  - o   Number of Attachments
  - o   Attachment File Names
  - o   Custodian
  - o   Other Custodian (if global de-duplication is employed)
  - o   Confidentiality Designation
  - o   Document Type
  - o   Document Title
  - o   Document Extension
  - o   Author
  - o   Page Count
  - o   File Name
  - o   File Size
  - o   Hash Value
  - o   Date Last Modified
  - o   Time Last Modified
  - o   Date Created
  - o   Time Created
  - o   Date Last Accessed
  - o   Date Sent
  - o   Time Sent
  - o   Date Received
  - o   Time Received
  - o   Meeting Start Time
  - o   Meeting End Date
  - o   Meeting End Time
  - o   Email From
  - o   Recipients
  - o   Copyees
  - o   Blind Copyees
  - o   Email Subject
  - o   Importance
  - o   Path/Link to Native File (Relative path to any files produced in native format, such

---

[1] For electronically stored information other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, Microsoft Teams, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

2

as Excel spreadsheets or PowerPoints or media files)
  o OCR/ExtractedText Path
  o Conversation Index

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.
- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.
- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The file name should match the bates number assigned to the file. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form.
- Presentation, media, and audio visual files (including but not limited to photos, videos and audio files) will be produced as native files showing comments, hidden texts and comments, and similar data, excluding near zero image files and such images in signature blocks. A UNC file path must be included in the ESI load file. Additionally, a bates-stamped *.tif placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file, with language to indicate the file was produced natively.

3.    **PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA**

- If a database or other source of structured data contains responsive information, the parties agree to meet and confer to determine whether it is proportionate to the needs of the case to produce the responsive information and, if so, the method and manner for producing responsive information in a manner that is reasonable and proportionate to the needs of the case.

4.    **PRODUCTION OF TRANSCRIPTS**

- If deposition or other transcripts are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the transcripts. Before meeting and conferring, the producing party will provide the following information about the responsive transcripts. To the extent that the information listed below does not exist or is not reasonably accessible or available, nothing in this ESI Protocol shall require any party to extract, capture, collect or provide such information.
  o Date of the deposition, trial, hearing or other event (each an "event");
  o Duration of the event;
  o Name of the individual(s) who was/were recorded;
  o The forms in which the transcripts exist such as PDF, text file,
  o livenote or etranscript format (.lef, .ptx, or .ptz); and
  o List of exhibits associated with the transcript and/or event.