# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CYNTHIA WEISENBERGER, individually and on behalf of all others similarly situated, | ) ) ) | **Case No. 4:21-cv-3156 (JMG-SMB)** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| AMERITAS MUTUAL HOLDING COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**SECTION:**                                                                                            **PAGE:**

I.    **INTRODUCTION**..................................................................................................... 1

II.   **CASE SUMMARY**................................................................................................. 2

     **A.**    **The Security Incident.** ................................................................................ 2

     **B.**    **Procedural Posture.** ................................................................................... 3

     **C.**    **History of Negotiations.** ............................................................................ 3

III. **SUMMARY OF SETTLEMENT** ......................................................................... 4

     **A.**    **Settlement Class.** ....................................................................................... 4

     **B.**    **Settlement Benefits.** .................................................................................. 5

     **C.**    **The Notice and Claims Process.** .............................................................. 6

         1.    Notice .................................................................................................. 6

         2.    Claims ................................................................................................. 8

         3.    Exclusions ........................................................................................... 8

         4.    Objections ........................................................................................... 8

     **D.**    **Attorneys' Fees, Costs, Expenses, and Service Award.** ........................ 10

     **E.**    **Release.** .................................................................................................... 10

IV. **THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED** ............ 11

     A.    The Proposed Class is Sufficiently Numerous.......................................... 13

     B.    Questions of Law and Fact are Common to the Class. .............................. 13

     C.    Plaintiff's Claims and Defenses are Typical of the Class........................... 15

     D.    Plaintiff and Her Counsel Are Fair and Adequate Representation for the Class........... 15

     E.    Common Issues Predominate Over Individualized Ones, and Class Treatment is

Superior........................................................................................................ 16

**V.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ....... 18**

    A.    The Settlement is the Product of Good-Faith Arm's Length Negotiations and is Absent of any Collusion. ................................................................................................ 20

    B.    The Settlement Agreement Provides Substantial Relief to the Settlement Class, Particularly in Light of the Uncertainty of Prevailing on the Merits. .................................... 20

    C.    The Proposed Settlement Treats Settlement Class Members Equitably ...................... 23

    D.    Notice to the Class will be Adequate ............................................................. 23

    E.    Other Factors Considered by Eight Circuit Courts Weigh in Favor of Preliminary Approval. ................................................................................................................. 25

**VI. CONCLUSION ................................................................................................ 26**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525, 1540 (8th Cir. 1996) .................................... 15

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 620 (1997) ............................................. *passim*

*Bassett v. Credit Mgt. Servs., Inc.*,
    No. 8:17CV69, 2019 U.S. Dist. LEXIS 153263 (D. Neb. Aug. 6, 2019) ............................ 18

*Blades v. Monsanto Co.*,
    400 F.3d 562, 569 (8th Cir. 2005) ...................................... 16

*Briles v. Tiburon Fin., LLC*,
    2016 U.S. Dist. LEXIS 100249 (D. Neb. Aug. 1, 2016) ............................... *passim*

*Caligiuri v. Symantec Corp.*,
    855 F.3d 860, 865-66 (8th Cir. 2017)................................................21

*Caroline C. ex rel. Carter v. Johnson*,
    174 F.R.D. 452, 463 (D. Neb. 1996) ................................13

*Chacon et. al. v. Neb. Med.*,
    No. 8:21CV70, 2021 U.S. Dist. LEXIS 175645 (D. Neb. Sep. 15, 2021) .............................22

*Cleveland v. Whirlpool Corp.*,
    No. 20-cv-1906 (WMW/JFD), 2022 U.S. Dist. LEXIS 111091
    (D. Minn. June 23, 2022)........................................22

*Cohn v. Nelson*,
    375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ...................................11, 18

*Cullan & Cullan LLC v. M-Qube, Inc.*,
    No. 8:13CV172, 2016 U.S. Dist. LEXIS 132325 (D. Neb. Sep. 27, 2016)......................19, 23

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171, 1174 (8th Cir. 1995) ...................................15

*Donaldson v. Pillsbury Co.*,
    554 F.2d 825, 830 (8th Cir. 1977) .......................................15

*George v. Uponor Corp.*, CIV. 12-249,
    2015 U.S. Dist. LEXIS 119750 (D. Minn. Sept. 9, 2015).......................................25

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010).....22

*Hapka v. CareCentrix, Inc.*,
    No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) ...............17

*Harris v. Republic Airlines, Inc.*,
    No. 4-88-1076, 1991 U.S. Dist. LEXIS 16461 (D. Minn. Nov. 12, 1991) ..............................22

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299, 312–15 (N.D. Cal. 2018) ......................................17, 21

*In re Charter Commc'ns, Inc. Secs. Litig.*,

No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ..............11

*In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019)...................................................13

*In re Experian Data Breach Litig.*,
No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243
(C.D. Cal. May 10, 2019) ..........................................................................................22

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768, 784 (3d Cir. 1995) ...............................................................................11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013)......................................................................................23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012).............................................................13, 17

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) .........................................................................13, 26

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No.: 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113 (N.D. Ga. Aug. 23, 2016) .........17

*In re Xcel Energy, Inc., Secs. Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980, 998 (D. Minn. 2005) ..............................................................21

*Klug v. Watts Regulator Co.*,
No. 8:15CV61, 2016 U.S. Dist. LEXIS 169155 (D. Neb. Dec. 7, 2016)...............................13

*Liddell v. Bd. of Educ. of St. Louis*,
No. 4:72CV100 SNL, 1999 U.S. Dist. LEXIS 24131 (E.D. Mo. Mar. 12, 1999)...................11

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*,
921 F.2d 1371, 1383 (8th Cir. 1990) .......................................................................11

*Morgan v. United Parcel Serv. of Am., Inc.*,
169 F.R.D. 349, 355 (E.D. Mo. 1996). ....................................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950).........................................................................................24

*Paxton v. Union Nat'l Bank*,
688 F.2d 552, 561 (8th Cir. 1982). ................................................................ *passim*

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140, 1148 (8th Cir. 1999). .....................................................................18

*Pollard v. Remington Arms Co.*,
320 F.R.D. 198, 220 (W.D. Mo. 2017)......................................................................20

*Postawko v. Mo. Dep't of Corr.*,
No. 2:16-cv-04219-NKL, 2017 U.S. Dist. LEXIS 117238
(W.D. Mo. July 26, 2017).........................................................................................13

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 114080
(E.D. Mo. Dec. 8, 2009)............................................................................................19

*Simmons v. Enter. Holdings, Inc.*,
    No. 4:10CV00625 AGF, U.S. Dist. LEXIS 29366 (E.D. Mo. Mar. 6, 2012)..........................13
*U.S. Fid. & Guar. Co. v. Lord*,
    585 F.2d 860, 870 (8th Cir. 1978) .....................................................................................13
*Walkinshaw v. Commonspirit Health*,
    No. 4:19CV3012, 2022 U.S. Dist. LEXIS 186647, (D. Neb. Oct. 6, 2022)..........................18
*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541, 2551–57 (2011)......................................................................................16
*West v. PSS World Med., Inc.*,
    No. 4:13- cv-574, 2014 U.S. Dist. LEXIS 57150 (E.D. Mo. Apr. 24, 2014) .........................21
*White v. Nat'l Football League*,
    822 F. Supp. 1389, 1403 (D. Minn. Apr. 30, 1993)..........................................................14, 20

**Rules**

Fed R. Civ. P. 12(b)(6) ......................................................................................... 22
Fed. R. Civ. P. 23 ...........................................................................................11, 24
Fed. R. Civ. P. 23(a) .......................................................................................12,16
Fed. R. Civ. P. 23(a)(1) ..........................................................................................13
Fed. R. Civ. P. 23(a)(2) ..........................................................................................14
Fed. R. Civ. P. 23(a)(3) ..........................................................................................15
Fed. R. Civ. P. 23(b)(3) ..................................................................................*passim*
Fed. R. Civ. P. 23(e) ............................................................................................. 18
Fed. R. Civ. P. 23(e)(1)...........................................................................................23
Fed. R. Civ. P. 23(c)(2)(B) .....................................................................................23

**Statutes**

*Nebraska Uniform Deceptive Trade Practices Act*, Neb. Rev. Stat. Ann § 87-301 *et seq.*............ 3
*Nebraska Consumer Protection Act ("CPA")*, Neb. Rev. Stat. Ann  § 59-1601 .......................... 3

**Other Authorities**

*Newberg on Class Actions*
    § 13:10 (5th ed. 2013)............................................................................................ 19
*Manual for Complex Litigation*
    § 21.632 (4th ed. 2004) ......................................................................................12, 19

Plaintiff Cynthia Weisenberger ("Plaintiff"), individually and on behalf of all others similarly situated, submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

This case relates to a phishing event impacting Defendant Ameritas Mutual Holding Company ("Defendant" or "Ameritas") in or around May 2019 (the "Security Incident" or "Incident"), which resulted in the alleged access of personally identifiable information, including names, addresses, email addresses, dates of birth, Social Security numbers, member ID numbers, policyholder names, employer names, and policy numbers (the "Personal Information") of Ameritas's current and former customers, including Plaintiff. *See* Amended Class Action Complaint ("Complaint" or "Compl.") ¶¶ 1, 2. Ameritas notified Plaintiff and the Settlement Class about the Incident on or around August 13, 2019. *See id* at ¶ 5. Plaintiff subsequently filed the instant lawsuit in which she alleges that Ameritas failed to take adequate measures to ensure that Personal Information was safeguarded. *See id*. ¶ 9, *et seq*. Ameritas denies all liability and wrongdoing.

After extensive arm's length negotiations with the assistance of an independent and experienced third-party mediator, the Parties have reached a settlement that is fair, reasonable, and adequate. *See* Declaration of Jason S. Rathod (the "Rathod Decl.") ¶ 49-51. The Settlement Agreement (also referred to herein as "S.A."), which is attached hereto as Exhibit 1, provides for monetary relief to be paid by Ameritas to eligible claimants of a Settlement Class[1] that includes 95,644 persons whose Personal Information may have been accessed as a result of the Security Incident and who were sent written notice thereof. The monetary relief provides for

---

[1] Unless otherwise indicated, capitalized terms herein shall have the meaning as set forth in the Settlement Agreement.

reimbursements of Lost Time and unreimbursed Out-of-Pocket losses incurred as a result of the Security Incident up to $160 and $6,250, respectively. The Settlement also provides Settlement Class Members with one (1) year of triple-bureau credit monitoring, which includes monitoring of all three credit bureaus and at least $1 million in identity theft insurance. Finally, Ameritas has agreed to implement and/or maintain a series of ongoing data security and business practice enhancements through the end of the year 2024. Plaintiff strongly believes the Settlement is fair, reasonable, and adequate for the Settlement Class. *See* Rathod Decl. ¶¶ 49-51, attached hereto as Exhibit 2.

Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court grant her Unopposed Motion for Preliminary Approval of Class Action Settlement and direct notice of the settlement to be sent to the Settlement Class.

## II.    CASE SUMMARY

Ameritas is a Nebraska-based insurance company that provides services nationwide. Compl. ¶ 13. As part of its business, Ameritas received the Personal Information of its customers, including Plaintiff and the Settlement Class. *See id.* ¶ 16. Ameritas's registered headquarters are at 5900 O Street, Lincoln, NE 68510. *Id.*

### A.    The Security Incident.

Plaintiff alleges the Incident occurred from approximately May to June 2019 when cybercriminals accessed Ameritas's network. *See* Compl. ¶ 2. The data potentially accessed in the Security Incident may have included customer current and former names, addresses, email addresses, dates of birth, Social Security numbers, member ID numbers, policyholder names, employer names, and policy numbers. *See* Compl. ¶ 1.

**B.    Procedural Posture.**

As a result of the Security Incident, Plaintiff filed an initial complaint on August 17, 2021. She subsequently filed the Amended Complaint on November 3, 2021, alleging causes of action for: (1) Negligence; (2) Breach of Contract; (3) Breach of Implied Contract; (4) Breach of Fiduciary Duty; (5) Breach of Nebraska Consumer Protection Act ("CPA"), Nebraska Revised Statutes § 59-1601, *et seq.*; and (6) Breach of Nebraska Uniform Deceptive Trade Practices Act, Nebraska Revised Statutes § 87-301, *et seq*. See Compl. ¶¶ 133-210; Rathod Decl. ¶ 10. On November 17, 2021, Ameritas filed a motion to dismiss Plaintiff's amended claims. Rathod Decl. ¶ 10.

After the parties fully briefed Defendant's motion to dismiss, on April 7, 2022, the Court issued an order granting in part and denying in part the motion. *Id*. Litigation continued through July, whereupon the parties informed the Court of their intent to pursue mediation. On October 3, 2022, the Parties participated in a mediation and agreed to settle the matter on a class-wide basis. Thereafter, the Parties engaged in informal discovery and negotiation and have reached consensus. Upon agreement, Plaintiff now files this Motion, which is unopposed by Defendant.

**C.    History of Negotiations.**

The Parties agreed to mediate the matter with JAMS mediator Robert A. Meyer, a prominent mediator with significant experience in mediating data breach and privacy cases. Rathod Decl. ¶ 12. Counsel for Plaintiff brought extensive experience in data breach class actions to the table, which, along with their internal investigation and the informal discovery produced by Ameritas (including a production of information relating to the scope of the Security Incident and the class size), allowed Class Counsel to fully evaluate the strengths and weaknesses of Plaintiff's case and to conduct informed settlement negotiations. *See id.* ¶ 15-17. The Parties conducted good

faith, arm's-length settlement negotiations from early September 2022 through early January 2023, including a full-day mediation session before Mr. Meyer on October 3, 2022, followed by continuing negotiations led by Mr. Meyer over several subsequent weeks. *Id.* ¶ 17. After several rounds of negotiation through the mediator, the Parties reached an agreement in principle on all material terms of the class settlement. *See id.* Following the execution of a term sheet, the Parties diligently negotiated final terms and drafted and finalized the Settlement Agreement, along with the accompanying notice forms, a claim form, and other exhibits. *Id.* The Settlement Agreement and exhibits were finalized by the Parties on April 27, 2023. *Id.*

Despite the grounds that exist for each of Plaintiff's claims, which Ameritas expressly denies, none are certain to resolve in Plaintiff's favor on the merits. Further litigation would subject Plaintiff to numerous risks, including the risk that she and the other Settlement Class Members receive no recovery at all. The Settlement provides significant relief to Settlement Class Members, and Plaintiff strongly believes that the Settlement is favorable for the Settlement Class and is fair, reasonable, adequate, and worthy of preliminary approval. *See id.* ¶¶ 54-55.

### III.    SUMMARY OF SETTLEMENT

#### A.    Settlement Class.

The Settlement Class includes "all individuals residing in the United States to whom Ameritas sent notice of the Security Incident on or around August 2019." S.A. ¶ 1.3. The Settlement Class specifically excludes: (i) Ameritas or any related entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any members of the judiciary who are or have presided over the instant Action and members of their families and staffs; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the

criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

      **B.**     **Settlement Benefits.**

      The Settlement negotiated on behalf of the Class provides for numerous separate forms of relief:

      First, Ameritas will provide direct monetary relief to Settlement Class Members, capped at $850,000.00 in the aggregate, for reimbursement of expenses incurred as a result of the Security Incident. *See* S.A. ¶ 3.1. The payments available to Settlement Class Members are divided into two separate categories. *See* S.A. ¶ 3.2. The first category provides expense reimbursement for Lost Time responding to the Incident at $20 per hour for up to eight (8) hours, $160 total maximum per Settlement Class Member. *See* S.A. ¶ \$3.2.i.  Settlement Class Members may receive payment for up to two hours addressing issues related to the breach without providing third-party evidence and for between two and eight hours with such proof. The second category, "Out-of-Pocket Expenses," are defined in the Settlement Agreement as unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Security Incident. S.A. ¶ \$3.2.ii. They may include any of the following: (1) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's personal information; (2) costs incurred after August  1, 2019 and before the entry of the Preliminary Approval Order associated with accessing or freezing / unfreezing credit reports with any credit reporting agency; and (3) other miscellaneous expenses incurred related to any out-of-pocket expenses such as notary, fax, postage, copying, mileage, bank fees, cell phone charges (if charged by the minute), data charges (if charged based on the amount of data used), long-distance telephone charges or local travel expenses such as gasoline or

rideshare fees. S.A. ¶ 1.28. Settlement Class Members may submit a claim for Out-of-Pocket Expenses by submitting a claim under penalty of perjury, with accompanying documentation, verifying Out-of-Pocket Expenses as a result of the Ameritas Incident. S.A. ¶ 3.2.ii.

Second, Ameritas will provide one year of three-bureau credit monitoring, with at least $1 million in identity theft protection services and assistance in implementing further protections, including freezing and unfreezing credit. S.A. ¶ 3.2.iii. Settlement Class Members will be provided this benefit upon the filing of a formal claim. *Id.*

Lastly, Ameritas will implement and/or maintain data security and business practice enhancements that were verified in the Settlement Agreement to help protect Plaintiff's and Settlement Class Members' Personal Information in the future. Ameritas will maintain such practices through December 31, 2024. S.A. ¶ 4.1. These improvements are designed to help protect Plaintiff's and Settlement Class Members' Personal Information in the future. Costs associated with maintaining the data security enhancements will be paid by Ameritas separate and apart from other Settlement benefits. S.A. ¶ 4.2.

The maximum amount Ameritas is required to pay under the Settlement Agreement, excluding the cost of credit monitoring and maintenance of data security enhancements, is $850,000.00. S.A. ¶ 3.1. If the total amount of Approved Claims made by Settlement Class Members, together with the Settlement Administration Charges, the Service Award, and Attorneys' Fees and Expenses, exceeds the aggregate cap, the value of the payments to Settlement Class Members will be reduced on a *pro rata* basis such that the total amount paid by Ameritas does not exceed the $850,000 aggregate cap. *See id.*

    **C.**    **The Notice and Claims Process.**

    **1. Notice**

The Parties have selected Rust Consulting ("Rust") as the Settlement Administrator to provide notice of the settlement to the Settlement Class and otherwise administer the settlement, subject to the approval of the Court. *See* S.A. ¶ 1.27; *see generally* Declaration of Tiffaney Janowicz Regarding Notice to Class Members. Ameritas has agreed to pay for the cost of providing notice and the Costs of Claims Administration separate and apart from the settlement payments available to the Settlement Class Members, subject to the overall aggregate cap. S.A. ¶ 1.28. This is another benefit to the Settlement Class.

The Short and Long Form Notices and Claim Form negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *See* S.A. Exs. A-C. The agreed upon Notice program calls for direct and individual Notice to be provided to Settlement Class Members via first-class mail, with return mail costs paid, to the postal addresses that Ameritas has in its possession. S.A. ¶¶ 1.12, 1.13, 6.1. For those whose notice is returned as undeliverable, an attempt will be made to mail a new Notice to an updated address. S.A. ¶ 6.4.3. Notice is to be substantially completed no later than thirty (30) days after entry of the Preliminary Approval Order. *Id*.

The Settlement Administrator will establish a dedicated Settlement Website and will maintain and update the website throughout the claims period with Long Notice and Short Notice forms, any motion seeking Final Approval of this Agreement, any motion for an award of Attorneys' Fees and Expenses and Service Award, the Preliminary Approval Order, the Claim Form, the Complaint, and such other documents as Class Counsel and Ameritas agree to post or that the Court orders posted on the Website. S.A. ¶ 6.4. Settlement Class Members will be able to submit Claim Forms through the Settlement Website and to download Claim Forms to submit them

7

by mail. S.A. ¶ 6.4.1. The Settlement Administrator will also make a toll-free help line available to provide Settlement Class Members with information about the Settlement. *Id.*

### 2. Claims

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide if they would like to opt-out or object. Class Members will have seventy-five (75) days after the date on which the Notice Program ends—or the Notice Deadline[2]—to submit their Claim Form to the Settlement Administrator, either by mail or online, thereby providing Settlement Class Members ample time to decide whether to make a claim for reimbursement of monetary losses and/or free credit monitoring services. S.A. ¶ 1.4. The Settlement Administrator has authority to assess whether the claim made is valid. S.A. ¶ 3.4.

### 3. Exclusions

Any Class Member who wishes to opt-out of the Settlement must send an individually signed and timely submitted written notice of exclusion postmarked no later than forty-five (45) days after the Notice Deadline (defined in the S.A. as the "Opt-Out Deadline") to the Settlement Administrator. S.A. ¶ 1.17. The notice of exclusion must state the individual's name and address, a statement that he or she wants to be excluded from the Settlement, and the individual's signature. S.A. ¶ 6.11.

### 4. Objections

Similarly, Settlement Class Members who wish to object to the terms of the Settlement Agreement may submit a written notice of objection to be postmarked no later than forty-five (45) days after the Notice Deadline (the "Objection Deadline"). S.A. ¶ 6.16. To be timely, written notice

---

[2] The "Notice Deadline" is the date that is thirty days after entry of the Preliminary Approval Order. *See* S.A. ¶ 1.14.

of an objection in the appropriate form must be filed with the Clerk of the Court (and contain the case name and docket number) as set forth in the Settlement Agreement and be mailed first class postage prepaid to Class Counsel and Ameritas' counsel and filed or postmarked by no later than the Objection Deadline, as specified in the Notice. S.A. ¶ 6.15.

Such notice shall state:

a. the case name and number of the Action;

b. the objector's full name, address, email address, and telephone number;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. all grounds for the objection, accompanied by any legal support for the objection;

e. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Award;

f. the identity of all counsel representing the objector who will appear at the Fairness Hearing;

g. any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

h. a list of any persons who will be called to testify at the Fairness Hearing in support of the objection;

       i.   a statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; and

       j.   the objector's signature on the written objection (an attorney's signature is not sufficient)

*Id*.

Absent good cause, any Settlement Class Member who fails to comply with the requirements for opting out and/or objecting will waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Action. S.A. ¶ 6.17.

### D.    Attorneys' Fees, Costs, Expenses, and Service Award.

Consistent with best practices, the Parties did not discuss payment of attorneys' fees, costs, expenses, or a service award until after the substantive terms of the settlement had been agreed upon, other than that Ameritas would not object to a request for reasonable attorneys' fees, costs, expenses, and service award as may be ordered by the Court. S.A. ¶ 8.1; Rathod Decl. ¶ 43.

Plaintiff will seek, and Ameritas will not object to, an award of reasonable attorneys' fees to Class Counsel not to exceed $255,000, subject to Court approval. S.A. ¶ 8.4. Ameritas will also pay Plaintiff a service award in the amount of $2,500 for her services rendered on behalf of the Settlement Class, subject to Court approval. S.A. ¶ 8.2.

### E.    Release.

The release in this case is tailored to the claims or causes of action based on, relating to, concerning, arising out of, or activities stemming from the Security Incident. *See* Rathod Decl. ¶ 23. Settlement Class Members who do not exclude themselves from the Settlement Agreement

will release claims against Ameritas relating to the Security Incident. *See* S.A. ¶¶ 1.21-23, 3.5; Rathod Decl. ¶ 24.

## IV.    THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

Federal Courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual Plaintiff—or the Class—could hope to obtain. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also In re Charter Commc'ns, Inc. Secs. Litig.*, No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005); *Liddell v. Bd. of Educ. of St. Louis*, No. 4:72CV100 SNL, 1999 U.S. Dist. LEXIS 24131, at *13 (E.D. Mo. Mar. 12, 1999) (noting policy in favor of settlement); *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990) (same).

At the preliminary approval stage, trial courts typically first certify the class for settlement purposes, and then consider the fairness of the settlement. *Briles v. Tiburon Fin., LLC*, 2016 U.S. Dist. LEXIS 100249, at *12 (D. Neb. Aug. 1, 2016). As set forth below, the Settlement Class and Subclass proposed warrant certification for settlement purposes. Because the Settlement terms fall with the "range of reasonableness" under both the revised Rule 23 and the factors typically considered by the Eighth Circuit courts, it should be preliminarily approved so that persons in the Settlement Class can be notified of the Settlement and provided an opportunity to voice approval or opposition.

Plaintiff here seeks certification of a Settlement Class consisting of individuals who were notified that their Personal Information was potentially impacted as a result of the Security Incident. The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria[.]" § 21.632 (4th ed. 2004).

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. F. R. Civ. P. 23(a). Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In some ways, the standard of review for preliminary certification for settlement purposes is lessened: As no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*. Even still, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified on a national basis. *See, e.g., In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25,

2019); *see, also, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case should be similarly certified.

### A. The Proposed Class is Sufficiently Numerous.

Rule 23(a)(1) requires that the class be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). This element "requires only [i]mpracticability, not impossibility." *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978); *Klug v. Watts Regulator Co*., No. 8:15CV61, 2016 U.S. Dist. LEXIS 169155, at *14 (stating same). The difficulty inherent in joining "as few as 40 class members should raise a presumption that joinder is impracticable." *Briles*, 2016 U.S. Dist. LEXIS 100249, at *6. "Plaintiffs are not required to 'specify an exact number or to prove the identity of each class member, rather, 'the plaintiffs must only show a reasonable estimate of the number of class members'" *Postawko v. Mo. Dep't of Corr.*, No. 2:16-cv-04219-NKL, 2017 U.S. Dist. LEXIS 117238, at *19 (W.D. Mo. July 26, 2017).

Here, the Parties have identified approximately 95,644 individuals whose data was potentially impacted by the Security Incident. S.A. p. 1. This would clearly render joinder of individual claims impracticable. *See, e.g.*, *Caroline C. ex rel. Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996) (finding a class potentially numbering up to 1,037 sufficient to satisfy the requirement for numerosity); *Simmons v. Enter. Holdings, Inc.*, No. 4:10CV00625 AGF, 2012 U.S. Dist. LEXIS 29366 (E.D. Mo. Mar. 6, 2012) (certifying a class in excess of 200 persons sufficiently numerous to warrant certification); *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996) (finding numerosity met for class of at least 19 putative members). As such, the numerosity requirement is easily satisfied.

### B. Questions of Law and Fact are Common to the Class.

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation even where the individuals are not identically situated. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1403 (D. Minn. Apr. 30, 1993) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citations and quotations omitted)).

Here, the commonality requirement is met because Plaintiff can demonstrate numerous common issues exist. For example, whether Ameritas failed to adequately safeguard the records of Plaintiff and other Settlement Class Members is a common class-wide question. Ameritas's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether Ameritas unlawfully used, maintained, lost, or disclosed Plaintiff's and Settlement Class Members' private information;

- Whether Ameritas failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Security Incident;

- Whether Ameritas's data security systems prior to and during the Security Incident complied with applicable data security laws and regulations including, *e.g.*, HIPAA; and

- Whether Ameritas's conduct rose to the level of negligence.

14

These common questions, and others alleged by Plaintiff in her Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. As a preliminary matter, there are clearly many issues of law or fact common to the class.

### C.  Plaintiff's Claims and Defenses are Typical of the Class

"Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citation omitted). A plaintiff can meet the typicality requirement by showing that the claims of the representatives and members of the class both stem from a single event. *Paxton*, 688 F.2d at 561.

Here, Plaintiff's and Settlement Class Members' claims all stem from the same event—the Security Incident that occurred between about May 1, 2019 and June 4, 2019. Thus, Plaintiff's claims are typical of the Settlement Class Members' and the typicality requirement is satisfied at this preliminary stage.

### D.  Plaintiff and Her Counsel Are Fair and Adequate Representation for the Class.

Plaintiff must be able to provide fair and adequate representation for the Class. The focus of the adequacy requirement is whether (1) the class representatives have common interests with the members of the class, and (2) whether class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton*, 688 F.2d at 562–63.

Here, Plaintiff's interests are aligned with those of the Settlement Class in that she seeks relief for injuries arising out of the same Security Incident. Plaintiff's and Settlement Class

Members' data was all potentially impacted in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for reimbursement for costs and time expended in managing the personal impact that the Security Incident may have had on them. All Class Members will be offered the same credit monitoring services designed to ameliorate the potential impact of such a breach. Finally, each Settlement Class Member's data will be more surely safeguarded in the future by the increased security protections Ameritas has agreed to keep or put into place.

Further, counsel for Plaintiff have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. Rathod Decl. ¶ 2-4. Thus, the requirements of Rule 23(a) are satisfied.

### E.  Common Issues Predominate Over Individualized Ones, and Class Treatment is Superior.

To show that common issues predominate, Plaintiff must demonstrate that her claims can be proven on a systematic, class-wide basis. *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005); *see also Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551–57 (2011). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

In this case, the key predominating questions are whether Ameritas violated Nebraska's Consumer Protection Act, whether Ameritas had a duty to exercise reasonable care in safeguarding, securing, and protecting the Personal Information of Plaintiff and the Settlement Class, and whether Ameritas breached that duty. The common questions that arise from Ameritas's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding

predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No.: 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113, at *29 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability at trial, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of

thousands of individual data breach cases arising out of the same Security Incident. And, as noted above, the common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues.

As a preliminary matter, this Court should hold that the requirements of Rule 23(b)(3) are met, and the Class should be certified for settlement purposes.

## V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

A class action cannot be settled without court approval. Fed. R. Civ. P. 23(e). However, a "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999); *Bassett v. Credit Mgt. Servs., Inc.*, No. 8:17CV69, 2019 U.S. Dist. LEXIS 153263, at *5 (D. Neb. Aug. 6, 2019) (citing *Petrovic*); *see also Cohn*, 375 F. Supp. 2d at 852 ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."

Approval of a class action settlement under Rule 23(e) is "a two-step process": "First, the Court must determine whether the proposed settlement terms fall within the range of reasonableness such that preliminary approval is warranted. Second, after notice is given to the class, the Court must evaluate whether final approval is warranted." *Briles*, 2016 U.S. Dist. LEXIS 100249, at *1.

Here, the case is at the first step alone. A request for preliminary approval only requires an "initial evaluation" of the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632; *Walkinshaw v. Commonspirit Health*, No. 4:19CV3012, 2022 U.S. Dist. LEXIS 186647, at *7 (D. Neb. Oct. 6, 2022). The purpose of preliminary approval is to determine "whether to

direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein, et al., *Newberg on Class Actions* § 13:10 (5th ed. 2013).

Thus, at this stage, courts generally undertake a limited review of the proposed settlement. *Id.* "At the preliminary approval stage, the court's focus is on whether a proposed settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 U.S. Dist. LEXIS 132325, at *21 (D. Neb. Sep. 27, 2016). The Eighth Circuit court considers "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Briles*, 2016 U.S. Dist. LEXIS 100249, at *18. Courts also consider "procedural fairness to ensure that the settlement is not the product of fraud or collusion." *Walkinshaw*, 2022 U.S. Dist. LEXIS 186647, at *9 (cleaned up).

At the preliminary approval stage, the "'fair, reasonable, and adequate' standard [for settlement approval] is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 114080, at *13 (E.D. Mo. Dec. 8, 2009). "The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class." *Briles*, 2016 U.S. Dist. LEXIS 100249, at *12 (internal quotations omitted).

If the Court finds preliminary approval is warranted, Notice of the Settlement will be disseminated to Settlement Class Members who will have the opportunity to make a claim, object, or exclude themselves prior to the second—or final approval—stage of the Settlement.

Because the Settlement here falls well within the range of possible reasonable settlements, and because it was reached without procedural irregularities, it readily satisfies the requirements for preliminary approval.

### A. The Settlement is the Product of Good-Faith Arm's Length Negotiations and is Absent of any Collusion.

Here, the Settlement was reached only after months of arm's length negotiations between counsel for the Parties. Proposed Class Counsel conducted an extensive investigation into the merits of Plaintiff's claims prior to filing their Complaint and were well positioned throughout settlement negotiations to have a full understanding of the value of Plaintiff's and Class Members' claims. See *White*, 836 F. Supp. 1458 finding no evidence of collusion and concluding settlement was the result of arm's length negotiations); *Pollard v. Remington Arms Co.,* 320 F.R.D. 198, 220 (W.D. Mo. 2017) (finding a settlement reached after extensive investigation and discovery by class counsel was reached in good faith). As such, the Settlement was the product of good faith, non-collusive, and arm's length negotiations and should be approved.

### B. The Settlement Agreement Provides Substantial Relief to the Settlement Class, Particularly in Light of the Uncertainty of Prevailing on the Merits.

The Settlement provides Class Members with real relief for their alleged harms as well as greater assurance that they are less likely to be subject to similar breaches due to Ameritas' data security systems in the future. Thus, this important factor weighs heavily in favor of preliminary approval.

Settlement Class Members who submit valid claims are eligible to receive up to $6,250 in reimbursements for unreimbursed Out-of-Pocket Losses incurred as a result of the Security Incident, as well as, separately, reimbursement at the rate of $20 per hour for up to eight (8) hours of Lost Time spent addressing issues pertaining to the Security Incident. S.A. ¶ 3.2.

Moreover, Class Members will be able to claim one (1) year of triple-bureau credit monitoring services. S.A. ¶ 3.2.iii. If Class Members were to buy this service on the open market, it could cost approximately $275.[3]  Even assigning a more conservative value to the service, such as $10 a month, it would still represent at least $100 worth of value for each Class Member who claims it. *See In re Anthem*, 327 F.R.D. at 323 ("Obviously, the credit monitoring services themselves confer an economic benefit, as they can retail for $9 to $20 a month."). Ameritas will also maintain extensive security enhancement protocols that will help safeguard Settlement Class Members' personal identifying information and personal health information in the future.  S.A. ¶ 4.1. Although it is difficult to assign a dollar value to these enhancements, they also represent a significant value for the Class—because of these security protocols, Class Members can be assured that their information will be better protected in the future.

Finally, as will be discussed at length in Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, the attorneys' fees agreed to here are reasonable. Eighth Circuit Courts regularly approve attorneys' fees of 25% to 36% of the value received by the class. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017); *see also In re Xcel Energy, Inc., Secs. Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases); *West v. PSS World Med., Inc.,* No. 4:13- cv-574, 2014 U.S. Dist. LEXIS 57150 (E.D. Mo. Apr. 24, 2014) (approving attorneys' fees of 33%); *Harris v. Republic Airlines, Inc.,* No. 4-88-1076, 1991 U.S. Dist. LEXIS 16461 (D. Minn. Nov. 12, 1991) (awarding a sum slightly in excess of 30% of the common benefit).

Here, the total value of credit monitoring service, if conservatively valued at approximately $100 per class member, would be worth tens of millions of dollars. This is in line with estimates

---

[3] For example, Experian triple-bureau credit monitoring is free for the first month, then $24.99 for each month thereafter. https://www.experian.com/consumer-products/compare-identity-theft-products.html.

of credit monitoring services value in other cases. *See In re Experian Data Breach Litig.*, No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243, at *19 (C.D. Cal. May 10, 2019) (valuing credit monitoring in a larger case at "at least $138.8 million.") The attorney's fees are a small fraction of that value. *See Cleveland v. Whirlpool Corp.*, No. 20-cv-1906 (WMW/JFD), 2022 U.S. Dist. LEXIS 111091, at *31 (D. Minn. June 23, 2022) (approving attorney's fees of approximately 8.6% of the total estimated value of class action settlement); *see also Chacon et. al. v. Neb. Med.*, No. 8:21CV70, 2021 U.S. Dist. LEXIS 175645 (D. Neb. Sep. 15, 2021) (approving settlement of $195,000 in which free credit monitoring was only made available to a subset of the class). The proposed attorney's fees and costs of $255,000 here, too, are far below the 25% to 36% of the value range customarily approved by Eighth Circuit courts.

The value achieved through the Settlement Agreement is guaranteed, even as chances of prevailing on the merits are uncertain. While Plaintiff strongly believes in the merits of her case, she also understands that Ameritas will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at *3-4 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Plaintiff of course disputes the defenses Ameritas will likely assert in this litigation—but it is obvious that her success at trial is far from certain. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all. *See Cullan and Cullan LLC*, 2016 U.S.

22

Dist. LEXIS 132325, at *23 (granting preliminary approval where "the settlements can deliver a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal").

### C.  The Proposed Settlement Treats Settlement Class Members Equitably

The proposed Settlement does not improperly discriminate between any segments of the Class, as all Settlement Class Members are entitled to the same relief respectively. All Settlement Class Members are eligible to receive credit monitoring and to make a claim for the same amount of Out-of-Pocket losses and Lost Time reimbursements. Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiff will seek a $2,500 award for her services on behalf of the Class, S.A. ¶ 8.2, this award is less than the amount that any given Class Member can claim in reimbursements.

Accordingly, this factor also weighs in favor of preliminary approval.

### D.  Notice to the Class will be Adequate

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the Manual for Complex Litigation. See S.A. Exs. B–C. Here, Ameritas has agreed to disseminate direct and individual Notice, via first class mail to the last known postal address, and, in cases of returned or undeliverable checks, the Settlement Administrator will make a reasonable attempt to locate an accurate address for that Class Member. S.A. ¶ 6.4.3. The mailing will be completed only after the Settlement Administrator has run the postal addresses of Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS, and any Notices returned as undeliverable will either be forwarded where a forwarding address is provided or, if time allows, will be resent after performance of a standard skip trace. *Id.*

Not only has Ameritas agreed to provide Settlement Class Members with individualized Notice via direct mail, but all versions of the Settlement Notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. S.A. ¶ 6.4.4. The Settlement Administrator will also make a toll-free telephone number available by which Settlement Class members can seek answers to questions or request a Notice or Claim Form be mailed to them at their address. S.A. ¶ 6.4.3.

The Notices themselves are clear and straightforward. They define the Class; clearly describe the options available to Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested service award for the Class Representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery;

describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of Class Counsel. *See* S.A. Exs. B–C.

The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Accordingly, the Notice Process should be approved by this Court.

### E. Other Factors Considered by Eight Circuit Courts Weigh in Favor of Preliminary Approval.

The factors considered by Eight Circuit Courts prior to the amendment of Rule 23 also weigh in favor of final approval.

First, the Settlement provides for significant relief in light of the risks of proceeding with further litigation. As discussed above, while Plaintiff is confident in the merits of her claims, she recognizes there is significant risk in further litigation due in part to the constantly evolving nature of data breach litigation. Thus, this factor weighs in favor of preliminary approval.

Second, there is no indication that further consideration of Defendant's financial condition would have resulted in a higher settlement amount. *See George v. Uponor Corp.*, CIV. 12-249, 2015 U.S. Dist. LEXIS 119750, at *21 (D. Minn. Sept. 9, 2015).

Third, continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiff is confident in the merits of her claims, the risks already acknowledged herein cannot be disregarded. Aside from the potential that either side can lose at trial, Plaintiff anticipates incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiff would likely need to defeat motion for summary judgement and both gain and maintain certification of the Class. The level of additional costs would significantly increase as Plaintiff begins her preparations for the certification argument and if successful, a near inevitable

25

interlocutory appeal attempt. As at least one court has found in this Circuit, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig*., No. 14-2522 (PAM/JJK), 2015 U.S. Dist. LEXIS 155137, at *8 (D. Minn. Nov. 17, 2015).

Fourth, while no opposition to the Settlement is currently known, this factor is better examined after notice has been issued to the Class. If the Proposed Settlement is preliminarily approved, Class members will have the opportunity to object or opt out, and the Court will be to consider those views at that time.

Thus, these additional factors weigh in favor of approving a result exactly like that obtained by Plaintiff and Class Counsel: significant cash reimbursements for all Settlement Class Members who submit valid claims, credit monitoring services that guarantee privacy protection provided to Class Members, and equitable relief in the form of increased data security safeguards, which will serve to better safeguard all Settlement Class Members' Personal Information. Accordingly, the Settlement should be preliminarily approved.

## VI.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant relief in the form of cost and time reimbursements, credit monitoring, and equitable relief consisting of increased data security safeguards. For these and the above reasons, the Settlement Agreement clearly falls within the range of reasonableness and Plaintiff respectfully requests this Court grant her Motion for Preliminary Approval of Class Action Settlement.

Dated: April 28, 2023     Respectfully Submitted,


          */s/ Vincent M. Powers*
          Vincent M. Powers Bar No. 15866
          POWERS LAW
          411 South 13th Street, Suite 300
          Lincoln, NE 68508
          Tel: (402) 474-8000
          powerslaw@me.com


          Jason S. Rathod*
          jrathod@classlawdc.com
          Nicholas A. Migliaccio*
          nmigliaccio@classlawdc.com
          MIGLIACCIO & RATHOD LLP
          412 H Street NE
          Washington, DC 20002
          Tel: (202) 470-3520
          Fax: (202) 800-2730

          *Permanently Admitted to Practice
          in D. Neb.