**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| CYNTHIA WEISENBERGER, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 4:21-cv-3156 (JMG-SMB) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| AMERITAS MUTUAL HOLDING COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 2

III.  PROCEDURAL HISTORY ............................................................................... 4

IV.  THE SETTLEMENT TERMS ......................................................................... 4

A.   The Settlement Class ...................................................................................... 4

B.   The Settlement Benefits ................................................................................. 5

C.   Remedial Measures and Security Enhancements ...................................... 5

D.   Class Notice and Settlement Administration ............................................. 6

E.   Attorneys' Fees and Expenses ...................................................................... 7

F.   Service Awards to Named Plaintiffs ........................................................... 7

G.   Release and Dismissal with Prejudice ........................................................ 7

V.   LEGAL STANDARD ........................................................................................ 8

VI.  ARGUMENT ..................................................................................................... 9

A.   The Court Should Grant Final Approval of the Settlement ..................... 9

1.   Class Representative and Class Counsel have Adequately Represented the Class ....................... 9

2.   The Settlement was the Result of Arms-Length Negotiation ....................................... 10

3.   The Relief Provided to the Class is Adequate ............................................................ 12

a.   The costs, risks, and delay of trial and appeal weigh in favor of approval. .............................13

b.   The Effectiveness of the Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, is Objective, Efficient, and Fair. ................16

c.    The Attorneys' Fees, Costs, and Service Award that Plaintiff Requested are Fair and Reasonable. ..................................................................................................16

d.    No Additional Agreements are Required to be Identified Under Rule 23(e)(3). ......................17

4.   The Settlement Treats all Class Members Equitably to Each Other ............................................ 18

**B.   Plaintiff has Also Satisfied the Eighth Circuit Approval Factors** ........................................... 18

1.   The Merits of Plaintiff's Case, Weighed Against the Terms of the Settlement, Favor Final Approval ........................................................................................................................ 18

2.   Ameritas's Financial Condition Allows for the Proposed Settlement .......................................... 19

3.   The Complexity and Expense of Further Litigation ..................................................................... 19

4.   The Amount of Opposition to the Settlement Weighs in Favor of Final Approval...................... 20

**VII. CONCLUSION** ................................................................................................................ 20

# **TABLE OF AUTHORITIES**

## **Cases**

*Armstrong v. Bd. of Sch. Dirs.,*
    616 F.2d 305, 325 (7th Cir. 1980) ...................................................................... 11

*Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.,*
    No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. May 27, 2020).......................... 13

*Baksh v. IvyRehab Network, Inc.,*
    No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) ...................................................... 13

*Caligiuri v. Symantec Corp.,*
    855 F.3d 860, 867 (8th Cir. 2017) .................................................................... 17

*Chacon et. al. v. Neb. Med.,*
    No. 8:21CV70, 2021 U.S. Dist. LEXIS 175645 (D. Neb. Sep. 15, 2021)............................ 13

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.,*
    281 F.R.D. 347, 353 (D. Minn. 2012).................................................................. 10

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268, 1276 (9th Cir. 1992) .................................................................. 11

*Cohn v. Nelson,*
375 F. Supp. 2d 844, 852 (E.D. Mo. 2005).................................................................. 9

*Corona v. Sony Pictures Entmt., Inc.,*
    No. 2:14-cv-9600 (C.D. Cal. Apr. 12, 2016) ........................................................ 13

*Cotton v. Hinton,*
    559 F.2d 1326, 1331 (5th Cir. 1977) .................................................................. 18

*Feldman v. Star Trib. Media Co. LLC,*
    No. 22-cv-1731 (ECT/TNL), 2024 U.S. Dist. LEXIS 106591 (D. Minn. June 17, 2024) ..... 10

*Gordon v. Chipotle Mexican Grill, Inc.,*
    Civil Action No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec.
    16, 2019) ................................................................................................ 16, 19

iv

*Grimm v. Am. Eagle Airlines, Inc.,*
    No. LA CV11-00406 JAK (MANx), 2014 U.S. Dist. LEXIS 199608 (C.D. Cal. Sep. 24, 2014) ................................................................................................................... 14

*Grunin v. Int'l House of Pancakes,*
    513 F.2d 114, 123 (8th Cir. 1975) .......................................................................... 8

*Hammond v. Bank of N.Y. Mellon Corp.,*
    No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ... 13

*Huyer v. Buckley,*
    849 F.3d 395, 399 (8th Cir. 2017) ........................................................................ 17

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299, 323 (N.D. Cal. 2018) ................................................................... 12

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
    No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) ................. 14

*Ins` re Gen. Motors Corp. Pick Up Truck Fuel Tank Prod. Liab. Litig.,*
    55 F. 3d 768, 784 (3d Cir. 1995) ........................................................................... 9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
    293 F.R.D. 21 (D. Me. 2013) ................................................................................ 14

*In re Holocaust Victim Assets Litig.,*
    105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) ..................................................... 11

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.,*
    No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805 (S.D.N.Y. June 8, 2022) ................ 13

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    205 F.R.D. 369, 375-76 (D.D.C. 2002) ................................................................ 11

*In re Target Corp. Customer Data Sec. Breach Litig.,*
    No. 14-2522 (PAM/JJK), 2015 U.S. Dist. LEXIS 155137 (D. Minn. Nov. 17, 2015) ........... 14

*In re Target Corp. Customer Data Sec. Breach Litig.,*
    No. 14-md2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ............................................ 14

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035, 1038 (8th Cir. 2002) ..................................................... 17

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    396 F. 3d 922, 932 (8th Cir. 2005) ......................................................... 8

*Jones v. Casey's Gen. Stores, Inc.*,
    266 F.R.D. 222, 230 (S.D. Iowa 2009) ................................................... 20

*Lechner v. Mut. of Omaha Ins. Co.*,
    No. 8:18CV22, 2020 U.S. Dist. LEXIS 186818 (D. Neb. Oct. 8, 2020) ............................... 11

*Lidell v. Bd. of Educ. of City of St. Louis*,
No. 4:72CV100, 1999 WL 33314210 (E.D Mo. Mar. 12, 1999)................................... 9

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*,
    921 F.2d 1371, 1383 (8th Cir. 1990) ....................................................... 9

*Mangone v. First USA Bank*,
    206 F.R.D. 222, 227 (N.D. Ill.2001)....................................................... 20

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*,
    834 F.2d 677, 681-82 (7th Cir. 1987) ...................................................... 11

*Marshall v. Nat'l Football League*,
    787 F.3d 502, 508 (8th Cir. 2015) ................................................... 14, 18

*Mowery v. Saint Francis Healthcare Sys.*,
    No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020).............................................. 12

*Parker v. Villa of Greenfield LLC*,
    No. 20-cv-1696-pp, 2022 U.S. Dist. LEXIS 200285 (E.D. Wis. Nov. 3, 2022) ................... 11

*Pulliam v. W. Tech. Grp., LLC*,
    No. 8:23-CV-159, 2024 U.S. Dist. LEXIS 19060 (D. Neb. Jan. 19, 2024)........................... 14

*Smith v. Triad of Ala., LLC*,
    No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017)........... 14

*Stoneridge Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.),*
   No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005).............. 18

*Taqueria El Primo LLC v. Ill. Farmers Ins.,*
   577 F. Supp. 3d 970, 993 (D. Minn. 2021) ............................................................ 10

*Tucker v. Ford Motor Co.,*
   No. 4:22-cv-00430-AGF, 2023 U.S. Dist. LEXIS 52745 (E.D. Mo. Mar. 28, 2023) ........... 15

*Van Horn v. Trickey,*
   840 F.2d 604, 607 (8th Cir.1988) ........................................................................ 18

*Walkinshaw v. Commonspirit Health,*
   No. 4:19CV3012, 2022 U.S. Dist. LEXIS 186647 (D. Neb. Oct. 6, 2022) ........................... 19

*Yarrington v. Solvay Pharms., Inc.,*
   697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) ......................................................... 17

*Yvonne Mart Fox v. Iowa Health Sys.,*
   No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640 (W.D. Wis. Mar. 4, 2021).............. 20

*Zilhaver v. UnitedHealth Grp., Inc.,*
   646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) ......................................................... 17

## **Rules**

Fed. R. Civ. P. 23(e) ........................................................................ *passim*

## **Other Authorities**

2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ................................................ 11

2 NEWBERG & CONTE § 11.41 ............................................................................ 9

Pursuant to Rule 23(e), Plaintiff Cynthia Weisenberger ("Plaintiff"), individually and on behalf of all others similarly situated, submits this Memorandum in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

On April 23, 2024, this Court preliminarily approved a class action settlement (the "Settlement") between Plaintiff and Defendant Ameritas Mutual Holding Company ("Ameritas" or "Defendant"). *See* Order Granting Preliminary Approval of Class Action Settlement (Doc. #64) (hereinafter "Preliminary Approval Order"). Under the terms of the agreement, Defendant has agreed to provide: (1) reimbursements for claims made for Lost Time and unreimbursed Out-of-Pocket losses incurred as a result of the Data Breach up to $160 and $6,250, respectively; (2) one year of triple-bureau credit monitoring services; and (3) court-approved attorneys' fees and costs up to $255,000 and Plaintiff's Service Award up to $2,500. *See* Settlement Agreement (Doc. 60-1, Ex. A) (hereinafter "S.A.") § 3.2. In addition to the benefits described above, the Settlement Agreement provides that Ameritas will maintain data security and business practice commitments that were implemented after the Data Breach through at least December 31, 2024. *Id.* § at 4.1.

Class Counsel has zealously prosecuted Plaintiff's claims, achieving the Settlement only after extensive investigation, negotiations, and mediation with respected JAMS mediator Robert A. Meyer. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. As of July 14, 2024, 1,091 Claim Forms have been submitted. *See* Declaration of Settlement Administrator, attached hereto as Exhibit A (hereinafter "Rust. Dec.") ¶ 3. The Claims Period is still open and will run through

---

[1] Ameritas does not oppose the relief sought by this Motion for Final Approval (the "Motion") and agrees that the Court should grant final approval. By not opposing this relief, Ameritas does not concede the factual basis for any claim and denies liability. The language in this Motion, including the description of proceedings as well as legal and factual arguments, is Plaintiff's, and Ameritas may disagree with certain of those characterizations and descriptions.

August 6, 2024. The deadline for Class Members to request to be excluded from the Settlement, or to object to it, was July 17, 2024. Preliminary Approval Order ¶ 11.

This case arises from a data breach experienced by Defendant Ameritas in or around May 2019, involving the potential unauthorized access of Personally Identifiable Information ("PII")[2] of 95,644 individuals (the "Data Breach"). *See generally* S.A. Recitals.

After nearly three (3) years of litigation and months of hard-fought negotiations, the Parties reached a resolution that—if granted final approval by the Court—will resolve the litigation and provide substantial relief to the Settlement Class. Particularly, the Parties negotiated the Settlement Agreement, providing that Ameritas pay no more than $850,000 (the "Aggregate Cap") which will provide payment to the Settlement Class, as well as payment for administrative expenses, notice, costs, and any attorneys' fees and service awards. S.A. § 3.1.

Settlement Class[3] Members benefit directly from the Settlement Agreement, with the ability to receive compensation for out-of-pocket losses, compensation for time spent addressing the Data Breach, and a year of credit monitoring. *Id.* § 3.2. The Settlement Agreement also includes several key measures designed to improve Defendant's data security practices. S.A. § 4.1. The results achieved by the Settlement are outstanding given the litigation risks faced by Plaintiff and compare favorably with results achieved in other data breach cases, especially given the size of the Settlement Class. Accordingly, Plaintiff respectfully moves this Court to enter an Order granting final approval of the Settlement Agreement.

## II.    STATEMENT OF FACTS

Ameritas is a Nebraska corporation with its principal place of business in Lincoln,

---

[2] Unless otherwise indicated, capitalized terms herein shall have the meaning as set forth in Plaintiff's Memorandum in Support of the Motion for Preliminary Approval.
[3] Defined in the Settlement Agreement as "all individuals residing in the United States to whom Ameritas sent notice of the Data Breach on or around August 2019." S.A. § 1.30.

Nebraska. Amended Class Action Complaint ("ACAC") ¶13. Plaintiffs allege that Ameritas's computer network was subject to a cybersecurity attack in or around May 1, 2019 through June 4, 2019. *Id.* ¶ 2. The Data Breach allegedly resulted in the access of Settlement Class Members' sensitive PII including, but not limited to names, addresses, email addresses, dates of birth, Social Security numbers, member ID numbers, policyholder names, employer names, and policy numbers. *Id.* ¶ 17.

Plaintiff alleges that her PII was compromised due to Ameritas's negligent acts and omissions and failure to protect the sensitive personal data of the Settlement Class. *See* ACAC ¶¶ 6, 12. She also contends that, despite becoming aware of the attack in or around May 2019, Ameritas did not notify Plaintiff until August 13, 2019. ACAC ¶ 5. Thus, according to Plaintiff, Ameritas unreasonably delayed notification after becoming aware of the breach. *Id.* ¶ 21. Ameritas denies these allegations and all liability related to the claims at issue in the litigation and the Data Breach.

Plaintiff alleges that she and the Class suffered injury as a result of Ameritas's conduct, including: (i) the compromise, publication, theft and/or unauthorized use of their Private Information; (ii) out-of-pocket costs associated with the prevention, detection, recovery theft of their PII; (iii) lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud; (iv) the continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the Private Information in its possession; (v) current and future costs in terms of time, effort and money that will be expended

3

to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vi) anxiety and distress caused by the fear of misuse of their Private Information. *See* ACAC ¶ 120 (full list).

## III.    PROCEDURAL HISTORY

Plaintiff filed her initial complaint on August 17, 2021. She subsequently filed the Amended Complaint on November 3, 2021, alleging causes of action for: (1) Negligence; (2) Breach of Contract; (3) Breach of Implied Contract; (4) Breach of Fiduciary Duty; (5) Breach of Nebraska Consumer Protection Act ("CPA"), Nebraska Revised Statutes § 59-1601, et seq.; and (6) Breach of Nebraska Uniform Deceptive Trade Practices Act, Nebraska Revised Statutes § 87-301, et seq. *See* ACAC ¶¶ 133-210. On November 17, 2021, Ameritas filed a motion to dismiss Plaintiff's amended claims. Doc. #15.

After the Parties fully briefed Defendant's motion to dismiss, on April 7, 2022, the Court issued an order granting in part and denying in part the motion. Doc. # 26. Litigation continued through July, whereupon the Parties informed the Court of their intent to pursue mediation. *See* Rathod Declaration in Furtherance of Preliminary Approval ("Rathod Dec.") ¶11. On October 3, 2022, the Parties participated in a mediation and, through informal discovery and further negotiation, agreed to settle the matter on a class-wide basis. *Id.* Subsequently, Plaintiff filed her unopposed Motion for Preliminary Approval on April 28, 2023. Doc. #59. The Court granted Plaintiff's unopposed Motion for Preliminary Approval on April 23, 2024. Doc. # 64. Plaintiff now files the instant unopposed Motion.

## IV.    THE SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement Agreement provides substantial relief for the Settlement Class. The

4

Settlement Class, defined *supra*, contains 95,644 individuals. S.A. Recitals.

### B.  The Settlement Benefits

Ameritas has agreed to pay up to $850,000 which will be used to make payments to the Settlement Class (pursuant to valid claims submitted), to cover the costs of administration charges, and any Attorneys' Fees and Service Award. S.A. § 3.1. The following benefits are available to Settlement Class Members: reimbursement for up to $6,250 in unreimbursed out-of-pocket losses traceable to the Data Breach; cash payment for up to $160 for time spent addressing the Data Breach ($20 per hour, up to eight hours); and one (1) year of three-credit bureau credit monitoring and $1 million in identity theft insurance. *Id.* at § 3.2(i-iii). The $850,000 cap does *not* encompass credit monitoring and business practice commitments. *Id.* at § 3.1.

### C.  Remedial Measures and Security Enhancements

Ameritas has also adopted measures to enhance its data security. *Id.* at § 4.1. Specifically, Ameritas has agreed to:

i.      Maintain a risk-based Information Security Program designed to ensure the confidentiality, integrity, and availability of Ameritas's information systems and data;

ii.     Employ a Chief Information Security Officer to lead the Information Security Program, who shall report to a committee of Ameritas's Board of Directors on relevant cybersecurity issues;

iii.    Evaluate the Information Security Program at least annually against an industry-standard (such as NIST, ISO, or FAIR) cybersecurity risk assessment process;

iv.     Require multi-factor authentication to access the Ameritas internal network from an external network;

v.      Implement or maintain a risk-based Data Loss Prevention process to monitor data transmissions containing sensitive data elements (e.g., PCI, PII, and PHI); and

5

vi.    Maintain a written incident response plan designed to promptly respond to, and recover from, any cybersecurity event materially affecting the confidentiality, integrity, or availability of the Information Systems. *Id.*

These changes will benefit Settlement Class Members whose PII remains in Ameritas's possession by providing enhanced protection of the Settlement Class's PII from unauthorized access.

### D.  Class Notice and Settlement Administration

The Parties selected Rust Consulting Inc. (the "Administrator") as the settlement administrator through a competitive bidding process. On May 23, 2024 (the "Notice Date"), the Administrator disseminated 95,644 Short Form Notices via U.S. Mail. Rust Dec. ¶ 2.  For Notices returned undeliverable with forwarding address information, Short Form Notice will be re-mailed to the updated address. *Id.* ¶ 4. Rust will perform industry-standard skip trace processes to identify Short Form Notices returned undeliverable without a forwarding address. These Short Form Notices will be re-mailed to the extent an updated address is identified via the previously mentioned procedure. *Id.* As of July 14, 2024, 6,279 Notices were returned to the Administrator as undeliverable without a forwarding address and 101 were returned with a forwarding address. *Id.* at ¶ 5. Currently, 3,878 Short Form Notices are eligible for re-mailing. *Id.*

Also on May 23, 2024, the Settlement Website, www.ameritasdataincident.com, went live. Rust Dec. ¶ 7. The Settlement Website contains information regarding Claim Form submission (i.e., through the Website) and downloadable documents, including the Long Form Notice, Claim Form, the Settlement Agreement, Memorandum in Support of the Motion for Preliminary Approval and corresponding Order granting Preliminary Approval, as well as other documents the Parties agreed should be posted therein. *Id.* Additionally, a toll-free help line, 1-833-915-0874,

was made available to address Settlement Class Members' inquiries. *Id. at* ¶ 9.

The objection and exclusion deadline was July 17, 2024. Rust Dec. ¶ 11. As of July 14, 2024, the Administrator had received a total of 1,091 claim forms. *Id.* at ¶ 3. Thirty-one (31) requests for exclusions and no objections have been filed. *Id.* at ¶ 12. The Administrator will provide a final report summarizing the number of valid and timely requests for exclusion within five (5) business days after the Opt-Out Deadline, identifying each Settlement Class Member who timely and validly requested exclusion from the Settlement. *Id.* at ¶ 13.

### E. Attorneys' Fees and Expense*s*

Consistent with best practices, the Parties did not discuss payment of attorneys' fees, costs, expenses, or a service award until after the substantive terms of the class-wide Settlement had been agreed upon, other than that Ameritas would not object to a request for reasonable attorneys' fees, costs, expenses, and service award as may be agreed to by the Parties and/or as ordered by the Court. *See* S.A. § 8.1*; see also* Rathod Dec. ¶ 43. Particularly, Plaintiff seeks, and Ameritas does not object to, an award of reasonable attorneys' fees, reasonable costs, and litigation expenses to Plaintiff's counsel not to exceed $255,000 (which shall be subject to the Aggregate Cap), subject to Court approval. Id. ¶ 44; s*ee also* S.A. ¶ § 8.4.[4]

### F. Service Awards to Named Plaintiffs

Ameritas will also pay Plaintiff a service award in the amount of $2,500, subject to the Aggregate Cap, for her services rendered on behalf of the Settlement Class subject to Court approval. *See* S.A. ¶§ 8.2.

### G. Release and Dismissal with Prejudice

Plaintiff and the Settlement Class, upon entry of the Final Approval Order, will be deemed

---

[4] Plaintiff will file her Motion for Attorney's fees, costs, and service award by separate motion by July 26, 2024.

to have released all claims against Ameritas related to the Data Breach. S.A. § 7.1-7.3; *See id.* § 1.22 ("Released Claims" definition). At that time, the Parties will request that the Court dismiss the action with prejudice.

## V.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23(e), a class action settlement must be "fair, reasonable and adequate" in order for it to merit final approval.  As discussed more fully below, Plaintiff satisfies all the requisite criteria.

Rule 23(e) requires court approval of any settlement of claims brought on a class basis. "The claims . . . of a . . . class proposed to be certified for purposes of settlement – may be settled . . . or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The "court may approve [a class action settlement] . . . only on finding that [the settlement] is fair, reasonable and adequate . . ." Fed. R. Civ. P. 23(e)(2). "Under Federal Rule of Civil Procedure 23(e), the district court acts as a fiduciary, serving as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F. 3d 922, 932 (8th Cir. 2005), citing *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975). "The court's role in reviewing a negotiated class settlement is . . . 'to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Marshall v. Nat'l Football League,* 787 F.3d 502, 509 (8th Cir. 2015) (citation omitted).

Therefore, a court must consider the following Rule 23(e)(2) factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

## VI.    ARGUMENT

### A.  The Court Should Grant Final Approval of the Settlement

As a matter of public policy, settlement is a highly favored means of resolving disputes—particularly in complex cases where substantial judicial resources can be conserved by avoiding litigation. *See* 2 NEWBERG & CONTE § 11.41, at 11-85 (citing cases); *see also Cohn v. Nelson,* 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F. 3d 768, 784 (3d Cir. 1995); *Lidell v. Bd. of Educ. of City of St. Louis,* No. 4:72CV100, 1999 WL 33314210, at *4 (E.D Mo. Mar. 12, 1999) (noting policy in favor of settlement); *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.,* 921 F.2d 1371, 1383 (8th Cir. 1990) ("[t]he law strongly favors settlement.")

#### 1.   Class Representative and Class Counsel have Adequately Represented the Class

First, and in accordance with Rule 23(a)(4), the class representative must "fairly and adequately protect the interests of the class." *Id*. To satisfy this requirement, a plaintiff must establish that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Feldman v. Star Trib.*

*Media Co. LLC,* No. 22-cv-1731 (ECT/TNL), 2024 U.S. Dist. LEXIS 106591, at *13 (D. Minn. June 17, 2024) (quoting *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.,* 281 F.R.D. 347, 353 (D. Minn. 2012). "This inquiry requires the Court to evaluate the adequacy of both the proposed class representatives and the proposed class counsel." *Taqueria El Primo LLC v. Ill. Farmers Ins.,* 577 F. Supp. 3d 970, 993 (D. Minn. 2021).

The Court has already determined that Plaintiff Weisenberger is a suitable representative. *See* Doc # 64 (Preliminary Approval Order), p. 1-2. Specifically, she is a member of the Class who alleges the same injuries and seeks, like other Class Members, both reimbursement for costs incurred due to the Data Breach and protection from potential negative consequences of the same. *Id.* at 2. In addition, she has already represented the Class by providing information for pleadings and settlement discussions, informal discovery responses, engaged with Class Counsel regarding the litigation, participated in the settlement negotiations via email, and approved the proposed Settlement terms. Rathod Dec. ¶ 45. As such, her interests and the interests of her counsel are not inconsistent with those of other Class Members.

Further, counsel for Plaintiff has decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* id. at ¶ 5. The Settlement was reached only after Class Counsel completed an extensive investigation of the case and Ameritas provided informal discovery related to the merits of Plaintiff's claims. Rathod Dec. ¶ 17. The informal exchange of information, combined with Plaintiff's and Class Counsel's research, allowed Class Counsel to fully evaluate the strengths and weaknesses of Plaintiff's case and to conduct informed settlement negotiations. *Id.* Since no new conflicts have arisen since preliminary certification, the Settlement meets the requirements of Rule 23(e)(2)(A).

### 2. The Settlement was the Result of Arms-Length Negotiation

10

Courts recognize that arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011). *See Lechner v. Mut. of Omaha Ins. Co*., No. 8:18CV22, 2020 U.S. Dist. LEXIS 186818, at *10-11 (D. Neb. Oct. 8, 2020) (holding that courts have determined that a proposed settlement is presumed to be fair and reasonable when it is the result of arm's length negotiations); *Armstrong v. Bd. of Sch. Dirs.,* 616 F.2d 305, 325 (7th Cir. 1980); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (internal quotations and citation omitted)); *In re Holocaust Victim Assets Litig.,* 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal quotation omitted)). Indeed, settlements are regularly granted approval where a court finds that they are the product of informed, non-collusive, arm's-length negotiations. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.,* 834 F.2d 677, 681-82 (7th Cir. 1987); *Parker v. Villa of Greenfield LLC,* No. 20-cv-1696-pp, 2022 U.S. Dist. LEXIS 200285, at *3 (E.D. Wis. Nov. 3, 2022).

The Settlement here is the result of extensive arm's-length negotiations. Preliminary Approval Order, p. 5. The Agreement was reached with the assistance of respected mediator Robert A. Meyer and was only finalized after a full-day mediation and weeks of post-mediation negotiations. *See* Rathod Dec. ¶¶ 12, 14. Class Counsel and Defense Counsel, both highly experienced in data breach class actions, had a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. Rathod Dec. ¶¶ 13,17. They exchanged emails

and held many direct telephone conferences over a period of months, in addition to formal mediation. *Id. at* ¶ 17. Therefore, this factor is satisfied.

### 3. The Relief Provided to the Class is Adequate

Fed. R. Civ. P. 23(e)(2)(C) requires examination of the relief provided by the Settlement. Not only does the Settlement provide Class Members with immediate relief, but it also avoids the likely delays of further litigation that would occur should this matter proceed, as well as the inherent risk that the Class will obtain an adverse final judgement or face a reversal upon appeal. Moreover, the Settlement negotiated on behalf of the Class provides significant relief. *See e.g.,* S.A. The Settlement, if approved, will allow Settlement Class Members to make a claim for unreimbursed out-of-pocket losses related to the Data Breach up to $6,250. S.A. § 3.2(ii). Class Members will be reimbursed for time spent addressing the consequences of the Data Breach at a rate of $20 per hour (up to eight (8) hours). *Id.* at § (i). In addition, Ameritas will offer all Class members a year of three-bureau credit monitoring. *Id.* at § (iii). Finally, Ameritas will make enhancements to its data security to protect Class Members' PII remaining in its possession. *Id.* at § 4.1.

The relief provided compares favorably with other settlements finally approved in other data breach cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.,* No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 in out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 323 (N.D. Cal. 2018) (holding that credit monitoring services themselves confer an economic benefit onto the class); *Baksh v. IvyRehab Network, Inc.,* No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to

12

$75 per class member in out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancement); *Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.,* No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. May 27, 2020) (providing up to $210 per class member for reimbursement of ordinary expenses and time spent dealing with the data breach, up to $2,500 for extraordinary losses, and equitable relief in the form of security enhancements valued at no less than $480,000).

As of July 14, 2024, the Administrator had received a total of 1,091 claim forms, *see* Rust Dec. ¶ 11, which represents a claims rate of approximately 1.14 percent. The claims rate is similar to that in other data breach settlements. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.,* No. 14-md2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (0.23% claims rate); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.,* No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *32 (S.D.N.Y. June 8, 2022) (0.25 % claims rate); *Corona v. Sony Pictures Entmt., Inc.,* No. 2:14-cv-9600 (C.D. Cal. Apr. 12, 2016), ECF Nos. 164, 166 (0.7% claims rate). For example, in this District, in the data breach settlement in *Chacon, et. al. v. Neb. Med.*, No. 8:21-cv-00070-RFR-CRZ, the parties reported a claims rate of 0.02 percent at final approval (*see* Dkt 21-1, at p. 10), and the settlement was approved. *See Chacon et. al. v. Neb. Med.*, No. 8:21CV70, 2021 U.S. Dist. LEXIS 175645 (D. Neb. Sep. 15, 2021).

      a.   *The costs, risks, and delay of trial and appeal weigh in favor of approval.*

The relief provided by the Settlement Agreement is significant, especially in light of the costs, risks, and delay of further litigation. Specifically, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. *See Hammond*

*v. Bank of N.Y. Mellon Corp.,* No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at

*2-4 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule

56 stage). Because the "legal issues involved [in data breach litigation] are cutting-edge and

unsettled . . . many resources would necessarily be spent litigating substantive law as well as other

issues." *In re Target Corp. Customer Data Sec. Breach Litig.,* No. 14-2522 (PAM/JJK), 2015 U.S.

Dist. LEXIS 155137, at *7-8 (D. Minn. Nov. 17, 2015).. Indeed, a comparable data breach suit

was recently dismissed in this District for failure to allege a cognizable injury. *See Pulliam v. W.

Tech. Grp., LLC,* No. 8:23-CV-159, 2024 U.S. Dist. LEXIS 19060, at *22 (D. Neb. Jan. 19, 2024).

That case is presently pending before the Eighth Circuit and, if affirmed, could compel dismissal

of this suit. *See Pulliam v. W. Tech. Grp.. LLC,* No. 24-1300 (8th Cir.).

Class certification is another hurdle that would have to be met—and one that has been

denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach

Litig.,* 293 F.R.D. 21 (D. Me. 2013); *see also In re Blackbaud, Inc., Customer Data Breach Litig.,*

No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *93-94 (D.S.C. May 14, 2024)

(denying the plaintiffs' motion to certify the class after years of litigation). To be clear, outside of

the settlement context, the Class has not yet been certified, and Ameritas will certainly oppose

certification should the case proceed. Thus, Plaintiff "necessarily risk[s] losing class action status"

should her case proceed. *Grimm v. Am. Eagle Airlines, Inc.,* No. LA CV11-00406 JAK (MANx),

2014 U.S. Dist. LEXIS 199608, at *26 (C.D. Cal. Sep. 24, 2014). Furthermore, class certification

in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala.,

LLC,* No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17,

2017). The relative absence of trial class certification precedent in the comparatively novel data

breach setting adds to the risks posed by continued litigation. In similar vein, the pending appeal

14

in *Pulliam*, which concerns the requirements to demonstrate injury in a data breach suit, could greatly impact the Plaintiffs ability to present classwide proof of injury here. *See Tucker v. Ford Motor Co.*, No. 4:22-cv-00430-AGF, 2023 U.S. Dist. LEXIS 52745, at *15-16 (E.D. Mo. Mar. 28, 2023) ("[A]ccording to Defendant, because discovery has already revealed that Plaintiff's alleged injury is not a certainty and that an individualized inquiry is necessary to determine each class member's standing, the Court should strike Plaintiff's putative classes for lack of standing without further discovery."). Class certification and trial are inherently risky and a hazard for plaintiffs.

There was also a risk that Plaintiff's claims would not have survived, or survived in full, on a class-wide basis after a motion for class certification, motions for summary judgment, and *Daubert* motions on damages methodologies, among other such opposition. To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unpaved, particularly in the area of damages. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. Assuming *arguendo* that Plaintiff prevailed on a motion for class certification, successfully defeated all the other objections and motions filed by Ameritas, and proceeded to trial, Plaintiff still would have faced significant risks, costs, and delay including likely interlocutory and post-judgment appeals.

Balanced against these inherent risks, the $850,000 Settlement provides significant and immediate value to Class Members. Broken down further, the proposed Settlement ensures that Settlement Class Members with valid claims for unreimbursed Out-of-Pocket Losses or Lost Time will receive guaranteed compensation now and provides Settlement Class Members with access to credit monitoring services, benefits that may not have been available at trial. Pursuant to the above

discussion, this field of data breach litigation is evolving, and there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.,* Civil Action No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.").

Finally, pursuant to the protections of settlement privilege, Defendant provided Plaintiff with a cybersecurity expert's declaration contending that, based on his analysis, there is no evidence that data from the Data Breach is available on the deep or dark web. This defense would be costly to counter and pose additional risk for showing class-wide injury at class certification as well as injury and damages for the claims at the merits phase. In sum, the substantial costs, risks, and delay of a trial and subsequent appeal that Plaintiff would endure, when contrasted with the substantial benefits contained in the present Settlement, support the finding that the proposed Settlement is adequate.

### b. *The Effectiveness of the Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, is Objective, Efficient, and Fair.*

The Settlement Administrator is responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. *See* S.A. § 3.4. In the event the Settlement is finally approved, the Administrator is directed to effectuate the distribution of Settlement Benefits. *Id.* § IX. All Class Members have until August 6, 2024 to submit claims for reimbursement for Lost Time and Out-of-Pocket Losses. However, Settlement Class Members have already been doing so, quickly and easily. Rust Dec. ¶ 3. Consequently, the Settlement provides for effective processing and distribution of relief and should be approved.

### c. *The Attorneys' Fees, Costs, and Service Award that Plaintiff Requested are Fair and Reasonable.*

Plaintiff will seek, and Ameritas will not object to, an award of reasonable attorneys' fees to Plaintiff's counsel not to exceed $255,000, subject to Court approval. *See* S.A. ¶ 8.2. Ameritas has also agreed to pay Plaintiff a service award in the amount of $2,500 for her services rendered on behalf of the Settlement Class, which is also subject to Court approval. *See* S.A. ¶ 74.

As will be explained in more detail in Plaintiff's forthcoming motion, these attorneys' fees and service award are fair and reasonable. The attorneys' fees sought are less than a third of the total value provided to the Class, although courts have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer v. Buckley,* 849 F.3d 395, 399 (8th Cir. 2017)*; see, e.g., In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming attorneys' fee award of 36% in class action settlement).

In addition, Plaintiff's request for a service award is reasonable, since Courts often grant service awards to named plaintiffs in class action suits to "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 867 (8th Cir. 2017) (quoting *Yarrington v. Solvay Pharms., Inc.,* 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (citations omitted). Considering that plaintiffs in this circuit are routinely granted service awards greater than $10,000, Plaintiff's request for $2,500 in recognition of her considerable contribution is more than palatable. *See Huyer,* 847 F.3d at 941 (affirming approval of settlement that included $10,000 service awards to named plaintiffs); *Zilhaver v. UnitedHealth Grp., Inc.,* 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (granting named plaintiffs $15,000 each in service awards from common fund settlement of $17,000,000).

### d. No Additional Agreements are Required to be Identified Under Rule 23(e)(3).

There are no additional agreements that require identification and/or examination under Rule 23(e)(3). This factor is therefore inapplicable.

17

4.   The Settlement Treats all Class Members Equitably to Each Other

Finally, the Settlement treats all Class Members equitably. Notably, each Class Member is able to submit a claim for out-of-pocket losses (up to $6,500), reimbursement for time spent remedying the fall-out from the Data Breach, and credit monitoring services. *See* S.A. § 3.2. Hence, each Class Member has an equal opportunity to benefit from the Settlement, regardless of any differences pertaining to the nature of the individual benefits received.

**B.  Plaintiff has Also Satisfied the Eighth Circuit Approval Factors**

Additionally, courts in the Eighth Circuit consider four factors when determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement (i.e., the "*Van Horn* factors"). *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.1988). In doing so, courts are mindful that "there is an overriding public interest in favor of settlement" in class action litigation. *In re Charter Commc'ns, Inc., Secs. Litig.,* No. 4:02-cv-1186, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)). Pursuant to the forthcoming reasons, Plaintiff has satisfied each of these factors.

1.   The Merits of Plaintiff's Case, Weighed Against the Terms of the Settlement, Favor Final Approval

The most important factor in the Court's determination is a "balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall,*  787 F.3d at 508 (quoting *Van Horn,* 840 F.2d at 607). While Plaintiff is confident in her claims, she recognizes the inherent risk of continued litigation. For example, absent this Settlement, this matter would have proceeded for an unknown duration, but with definite increases in time and expense, including (but not limited to): (1) additional discovery related to class certification, (2) briefing and argument on class

18

certification; (3) retention of experts and preparation of expert reports and expert discovery on class certification issues; (4) additional merits-related discovery, (5) retention of experts and preparation of expert reports on merits-related issues; (6) briefing and argument on summary judgment; (7) trial preparation, pre-trial motion practice and trial; and (8) post-trial motion practice and appeals.

2.    Ameritas's Financial Condition Allows for the Proposed Settlement

When determining whether to grant final approval of a settlement, courts in this Circuit consider the financial position of the defendant. *Walkinshaw v. Commonspirit Health,* No. 4:19CV3012, 2022 U.S. Dist. LEXIS 186647, at *8 (D. Neb. Oct. 6, 2022).  Simply put, during this determination, courts consider whether defendants can satisfy the proposed settlement's financial obligations. Here, Ameritas's financial condition is of no concern and therefore, this factor is also met.

3.    The Complexity and Expense of Further Litigation

The Settlement avoids significant expense, delay, and the likelihood of continued litigation that would be complex, expensive, and lengthy. At the bottom, data breach litigation is inherently complex and risky. *See Gordon,*  2019 U.S. Dist. LEXIS 215430 at *3 (holding that "[d]ata breach cases . . . are particularly risky, expensive, and complex."); *see also Yvonne Mart Fox v. Iowa Health Sys.,* No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *13-14 (W.D. Wis. Mar. 4, 2021). Moreover, at the time the Settlement was reached, additional fact and expert discovery, briefing on class certification and summary judgment, and the eventual trial in this matter remained. Additionally, Ameritas would have likely appealed any judgment in favor of Plaintiff and the Class, which would potentially continue this matter for years to come, thereby delaying the Class's relief, if any.

19

4.    The Amount of Opposition to the Settlement Weighs in Favor of Final
Approval

Plaintiff also satisfies the final *Van Horn* factor. Pursuant to the Notice Plan approved by

the Court (Preliminary Order, p.4), Notice was sent to all 95,644 individuals affected by the August

2019 Data Breach. Rust. Dec. ¶1. Class Members had until July 17, 2024 to exclude themselves

from the Settlement or to object to the Agreement. *Id.*  ¶ 11. No Class Members objected to the

Settlement, and only thirty-one (31) people opted out. *Id.* ¶ 12. The dearth of objections and the

comparatively few number of opt-outs are indicative of the class-wide support for the Settlement,

and "such overwhelming support by class members is strong circumstantial evidence supporting

the fairness of the Settlement." *Jones v. Casey's Gen. Stores, Inc.,* 266 F.R.D. 222, 230 (S.D. Iowa

2009) (quoting *Mangone v. First USA Bank,* 206 F.R.D. 222, 227 (N.D. Ill.2001)).

## VII.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable Settlement that will provide Class

Members with both significant monetary and equitable relief.  For the reasons discussed above,

and for those described in Plaintiff's Memorandum in Support of Unopposed Motion for

Preliminary Approval of Class Action Settlement (Doc. #59), Plaintiff respectfully requests this

Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class,

and appoint Class Counsel and Plaintiff as representative for the Class.


Dated: July 22, 2024                          Respectfully submitted,



                                             */s/ Jason S. Rathod*
                                             Jason S. Rathod*
                                             jrathod@classlawdc.com
                                             Nicholas A. Migliaccio*
                                             nmigliaccio@classlawdc.com

20

Saran Q. Edwards
sedwards@classlawdc.com
MIGLIACCIO & RATHOD LLP
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
Fax: (202) 800-2730

*Permanently Admitted to Practice in D. Neb.

Vincent M. Powers Bar No. 15866
**POWERS LAW**
411 South 13th Street, Suite 300
Lincoln, NE 68508
Tel: (402) 474-8000
powerslaw@me.com

*Counsel for Plaintiffs and the Proposed Class*

21

## CERTIFICATE OF COMPLIANCE WITH NEBRASKA CIVIL RULE 7.1(d)(3)

In accordance with Nebraska Civil Rule 7.1(d)(3), the undersigned certifies that the foregoing brief (including the caption, headings, footnotes, and quotations) contains fewer than 13,000 words, as reported by Microsoft® Word for Microsoft 365 MSO (Version 2406).

This the 22nd day of July 2024.

/s/Jason S. Rathod
Jason S. Rathod

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Jason S. Rathod*
Jason S. Rathod