IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CYNTHIA WEISENBERGER, individually and on behalf of others similarly situated,  Plaintiff,  vs.  AMERITAS MUTUAL HOLDING COMPANY,  Defendant. | 4:21-CV-3156  MEMORANDUM AND ORDER |

This matter is before the Court on the plaintiff's motions for final approval of class action settlement (filing 66) and for attorney's fees, costs, and a service award (filing 68). As required by Fed. R. Civ. P. 23(e)(2), the Court held a hearing on those motions on August 6, 2024. The plaintiff's submissions and other materials in the case file establish that class certification is appropriate under Rules 23(a) and 23(b)(3), the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2), and the requested attorneys' fees and costs, and the class representative service award, are reasonable under Rule 23(h). The motions will be granted.

I. BACKGROUND

This case involves a data security breach from 2019. The class members are the defendant's customers who received notice that their personally identifiable information, including names, addresses, email addresses, and Social Security numbers, were potentially accessed by cybercriminals. *See* filing 26 at 3; filing 64 at 5-6. The complaint alleged that the personal information from thousands of the defendant's customers was likely available for purchase on the

dark web. Filing 12 at 6. The plaintiff sought relief for herself and others similarly situated under a number of legal theories. The Court dismissed some of them on the defendant's motion; the plaintiff's surviving claims are based on the defendant's alleged negligence, breach of contract, and violations of the Nebraska Consumer Protection Act. *See* filing 12 at 39-47; filing 26 at 28.

The parties executed the settlement agreement (filing 60-1) in April 2023, approximately a year and a half after the plaintiff initially filed. The plaintiff filed an unopposed motion, pursuant to Fed. R. Civ. P. 23(e), to certify the settlement class, preliminarily approve the settlement agreement, and approve the form and manner of notice to the class. Filing 59. The Court granted that motion, finding, among other things, that this action could be maintained as a class action; that the prerequisites to class certification under Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) had been satisfied; and that certification of the settlement was superior to other available methods of the fair and efficient resolution of this controversy, because the questions of law and fact common to the class members predominated over any questions affecting individual members, satisfying Rule 23(b)(3). Filing 64 at 2-3. The Court certified the settlement class as all individuals residing in the United States to whom Ameritas sent an August 2019 notice regarding a May or June 2019 data breach, with some exclusions. *See* filing 64 at 5-6; filing 60-1 at 9-10.

The Court designated a class representative, appointed settlement class counsel and a settlement administrator, and scheduled a fairness hearing. Filing 64 at 5-6. And the Court mostly approved the forms of notice submitted by the parties, with minor amendments to ensure the class was consistently described. Filing 64 at 7. The Court found that the parties' plan for directing notice to the class members was the best notice practicable under the circumstances and complied with Rule 23 and due process. Filing 64 at 4-5.

The certified settlement class members, composed of 95,644 individuals, were mailed the Court-approved class action notices. The notice informed class members that they could submit an objection to either the Court or the settlement administrator, or they could exclude themselves from the class, before July 17, 2024. *See* filing 67-1 at 8. Class members had until August 6, 2024, to submit claims. No objections to the settlement agreement were received by the claims administrator or the Court. *See* filing 67-1 at 5; filing 70 at 2. The parties filed the present motions in advance of the fairness hearing, held on August 6, 2024. No class members or objectors appeared at the hearing. The Court requested additional evidence supporting the proposed award of attorney's fees, and that evidence was submitted on August 13. Filing 72; filing 72-1.

## II. FINAL APPROVAL OF SETTLEMENT AGREEMENT

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Rule 23(e). The Court acts as a fiduciary who must serve as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). Under Rule 23(e), the Court must conduct a hearing to assess the fairness of the settlement, and may intrude on the parties' private contract only to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *In re Wireless Tel. Fed.*, 396 F.3d at 934. Specifically, the Court must consider whether the class representatives and class counsel have adequately represented the class; whether the proposal was negotiated at arm's length; and whether the proposal treats class members equitably relative to each other. Rule 23(e)(2).

In determining whether a settlement is fair, reasonable, and adequate, the most important consideration is the strength of the case for the plaintiffs on the

merits, balanced against the amount offered in settlement. *Pollard v. Remington Arms Co.*, 896 F.3d 900, 907 (8th Cir. 2018) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999)); *see also In re Wireless Tel. Fed.*, 396 F.3d at 933; *Grunin*, 513 F.2d at 124. The Court also considers the defendant's financial condition, the complexity and expense of further litigation, and the amount of opposition to the settlement. *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015). In examining a proposed settlement for approval or disapproval, the Court does not try the case; the purpose of a compromise is to avoid the delay and expense of trial. *See Grunin*, 513 F.2d at 124; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

In this case, the Court finds that the appointed class representative and her counsel fairly and adequately represented the interests of the class members in connection with the settlement agreement, and that the class representative and the settling defendants were represented by able and experienced counsel. *See* filing 72-1. The settlement agreement was the product of good-faith, arm's-length negotiations by the class representative, the defendant, and their respective counsel. *See* filing 60-1.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members were adequate and reasonable and constituted the best notice practicable under the circumstances, satisfying Rule 23(c)(2)(B) and due process. The notice was reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afforded them an opportunity to present objections. *See Grunin*, 513 F.2d at 120. It also reasonably conveyed the required information, and afforded a reasonable time for those interested to make any appearance. *See id*. The contents fairly apprised the prospective members of the class of the terms of the proposed settlement (including attorney's fees and

expenses), and outlined the options open to them in connection with the proceedings. *Id.* at 122.

The settlement administrator sent 95,644 class action notices to the settlement class. Filing 67-1 at 3. Of those, 6,279 were returned, and 3,878 were able to be remailed. *Id.* So, approximately 97 percent of the mailed notices are presumed to have been delivered. *See id.* Forty-five class members excluded themselves from the settlement. Filing 70 at 4. And 1,200 class members filed a claim. Filing 70 at 1. No class members objected, and the Court has not identified any other opposition to the proposal. The record establishes that the direct notices were sent in accordance with the Court's earlier order. *See* filing 64; filing 70; filing 67-1. While low, the claims rate is not unusual for data breach cases like this. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (discussing *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) and *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-MD-2522, 2017 WL 2178306 (D. Minn. May 17, 2017)). The parties did their best to afford class members the opportunity to obtain relief. These efforts satisfy the Federal Rules and due process.

The settlement established an $850,000 settlement fund, which includes attorneys' fees and expenses. The settlement also provides that class members may obtain three years' credit-monitoring services, and the cost of such services are separate from the settlement fund. The $850,000 fund is intended to compensate the settlement class members for lost time (up to 8 hours at $20 per hour) and for actual, out-of-pocket losses incurred as a result of the data breach (requiring documentation from class members, and capped at a total individual payment of $6,250). Filing 60-1 at 12-13. The defendant has additionally agreed to remedial measures to prevent future security incidents, the costs of which will not come from the settlement fund. *See* filing 60-1 at 14-15.

The settlement bears a reasonable relationship to the case's merits. At the fairness hearing, the plaintiff acknowledged the risk of succeeding on the merits after the time and expense of trial. In particular, the plaintiff acknowledged the difficulty in proving causation, linking the defendant's allegedly tortious actions to any damages, or to her or other class members' information being found on the dark web. Additionally, the plaintiff identified a comparable data breach suit dismissed by another judge in this district for lack of standing. Filing 67 at 21; *Pulliam v. W. Tech. Grp., LLC*, No. 8:23-cv-159, 2024 WL 356777, at *10 (D. Neb. Jan. 19, 2024). That case is on appeal, and the Eighth Circuit's ultimate decision could compel dismissal of the present case. *See Pulliam v. W. Tech. Grp.*, No. 24-1300 (8th Cir.).

The costs of further litigation also demonstrate the reasonableness of the settlement. Data breach cases are complex, and would rely on extensive electronic discovery and potential discovery disputes, and expert analysis of the dark web and the information available on it. The settlement treats class members equitably, allowing members to submit claims for individualized lost time and out-of-pocket losses stemming from the data breach. *See* filing 60-1 at 13. Those who suffered more were able to be compensated equitably for those damages.

As a whole, the Court finds the settlement is fair, adequate, and reasonable. The settlement appropriately reflects the merits of the plaintiff's case and the complexity and expense of further litigation. *Marshall*, 787 F.3d at 508. The settlement also had little opposition, with only a handful of class members opting out, and none objecting. *See id.*; *In re Home Depot*, 2016 WL 6902351, at *4. The settlement provides equitable relief to the class members. The settlement is approved.

## III. ATTORNEY'S FEES AND SERVICE AWARD

In a certified class action, the Court may award reasonable attorney's fees and costs authorized by law or by the parties' agreement. Rule 23(h). The Court must be vigilant in protecting the rights of absent class members, including the right not to have their recovery reduced by excessive attorney's fees. *In re T-Mobile Customer Data Sec. Breach Litig.*, Nos. 23-2744 and 23-2798, 2024 WL 3561874, at *4 (8th Cir. July 29, 2024); Rule 23(e)(2)(C)(iii).

Courts use two main methods when awarding attorney's fees in this kind of case: the "lodestar method," or the percentage method. *In re T-Mobile*, 2024 WL 3561874, at *4. When using the percentage method, a lodestar crosscheck helps a court evaluate whether a percentage award would result in a windfall, though such a crosscheck is not required. *Id.* at *5, *7. The standards to be considered in calculating attorney's fees under a "lodestar" approach are (1) the number of hours spent in various legal activities by the individual attorneys, (2) the reasonable hourly rate for the individual attorneys, (3) the contingent nature of success, and (4) the quality of the attorneys' work. *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312-13 (8th Cir. 1981); *see also Grunin*, 513 F.2d at 127. The "reasonable hourly rate" for purposes of a lodestar analysis is the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad*, 643 F.2d at 1313. The starting point is multiplying the hours worked and typical hourly rates; only after such a calculation do other, less objective factors come into the equation. *Grunin*, 513 F.2d at 127.

Plaintiff's counsel here requests an award of $255,000 in attorney's fees and costs. Filing 69-1 at 2. This represents approximately 14 percent of the $850,000 settlement fund, and an even lower percentage when considering the funds expended for credit monitoring services supplied to the settlement class which are separate from the $850,000 fund. The requested percentage falls well

7

below the typical range of attorney's fees awards approved in the Eighth Circuit. *See Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (percentage awards between 25-36 percent of settlement funds are frequently awarded).

A lodestar crosscheck indicates the requested amount would not be a windfall. Based on the hours worked and the hourly fees provided by the attorneys (filing 69-1 at 12-13; filing 69-2 at 3), supplemented by the billing records demonstrating what work was performed (filing 72-1), the initial lodestar calculation is $287,786. That number is actually *higher* than the percentage amount requested.

While the attorneys in this case bill at significantly higher rates than attorneys in the general locality, the fee award is not unreasonable. *See Jorstad*, 643 F.2d at 1313. The average billed rate, based on all the attorneys involved, is around $700 per hour, which is much higher than this Court is used to seeing from Nebraska lawyers—but as local counsel pointed out, consumer protection class action cases are rare, and require some specialty. *See* filing 69-2 at 3. Regardless, even reducing the average attorney rate by half, the fees requested are approximately twice the lodestar crosscheck. Such a lodestar multiplier is reasonable when considering the significant research, briefing, and discovery that has been recorded in this case, and when considering that counsel have risked several years on a case that would yield them nothing if they lost at or before trial. *See* filing 72-1; *In re T-Mobile,* 2024 WL 3561874, at *6 (discussing *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 522 (E.D.N.Y. 2003), approving a lodestar multiplier of 3.5 for similar work).

Counsel for both parties were able to come to a comprehensive, fair, and reasonable settlement that affords the class adequate relief as required by Rule 23(e). The requested fee award is reasonable and not a windfall. *See* Rule 23(h); *In re T-Mobile,* 2024 WL 3561874, at *6-7. The costs requested, totaling $9,434.02, are well-supported and reasonable. *See* filing 69-2 at 3; filing 69-1 at

8

15. The most significant costs came from the plaintiff's share of mediation fees, which resulted in the approved settlement; the remaining costs consist of mailing and filing fees. *Id.* Additionally, the Court finds that the proposed service award for Cynthia Weisenberger, $2,500, is reasonable given Ms. Weisenberger's involvement in this case. *See* filing 69-1 at 15-16. The plaintiff's motion will be granted in full, and this case will be dismissed.

IT IS ORDERED:

1. The plaintiff's motion for final approval of class action settlement (filing 66) is granted.

2. The plaintiff's motion for attorney's fees, costs, and service award (filing 68) is granted.

3. The settlement agreement (filing 60-1) is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the settlement agreement.

4. Pursuant to Rule 23, for settlement purposes only, this action is certified as a class action, and the settlement class is certified, defined as: "All individuals residing in the United States to whom Ameritas sent an August 2019 notice regarding a May or June 2019 data breach." Excluded from the class are:

    a. Ameritas and any related entities, and their officers and directors;

    b. All settlement class members who timely and validly requested exclusion, whose names are listed in Attachment 1 (*see* filing 70 at 4);

    c. Any members of the judiciary who are presiding or have presided over the instant action, and their families and staffs; and

    d. Any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal data breach giving rise to the class action, or any person who pleads *nolo contendre* to any such charge.

5. Cynthia Weisenberger is designated as the settlement class representative.

6. Nicholas A. Migliaccio and Jason S. Rathod of Migliaccio & Rathod LLP are appointed as settlement class counsel.

7. Class counsel are awarded attorneys' fees in the amount of $245,163.98, and costs and expenses in the amount of $9,836.02. Such amounts shall be paid by the settlement administrator pursuant to and consistent with the terms of the settlement.

8. The class representative is awarded a service award in the amount of $2,500, such amount to be paid by the settlement

administrator pursuant to and consistent with the terms of the settlement agreement.

9. The terms of the settlement agreement and this Order shall be forever binding on the defendant, plaintiff, and all class members (regardless of whether any individual class member submits a claim form or seeks or obtains a settlement benefit), as well as their respective successors and assigns, except those persons listed in Attachment 1, affixed to this Order. Those listed in Attachment 1 are excluded from the settlement class and are not bound by the terms of the settlement agreement or this Order.

10. The releases set forth in Section 7 of the settlement agreement are expressly incorporated herein in all respects. The releases are effective as of the effective date defined in the settlement agreement. Accordingly, upon the effective date of the settlement and as provided in the settlement agreement, the plaintiff and each and every member of the settlement class (except those individuals listed in Attachment 1) shall have released the released claims against the released parties, as defined by the settlement agreement. Nothing in this Order shall bar any action by the parties to enforce or effectuate the terms of the settlement agreement or this Order.

11. The plaintiff and all settlement class members not listed in Attachment 1 are barred and permanently enjoined from

instituting, asserting, or prosecuting any of the released claims against any of the released parties.

12. The settlement, this Order, and the fact of the settlement do not constitute admissions or concessions by the defendant or any of the released parties of any fault, wrongdoing, or liability whatsoever, or an admission of the appropriateness of class certification for trial or dispositive motion practice. This Order is not a finding of the validity or invalidity of any claims asserted or defenses raised in this action. Nothing related to the settlement shall be offered or received in evidence as an admission, concession, presumption, or inference against the defendant or any of the released parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the settlement agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

13. The plaintiff and the defendant are authorized to agree to adopt such amendments or modifications of the settlement agreement or any exhibits attached thereto to effectuate the settlement that are not materially inconsistent with this Order, and do not materially limit the rights of members of the settlement class in connection with the settlement. The plaintiff and the defendant may agree to reasonable extensions of time to carry out the settlement agreement.

14. The Court retains and reserves jurisdiction over: (a) the implementation of the settlement and any distributions, (b) the action, until the effective date and until each and every act agreed to be performed by the parties shall have been performed pursuant to the terms of conditions of the settlement agreement, and (c) all parties, for the purpose of interpreting, implementing, and enforcing the settlement embodied in the settlement agreement.

15. This action is dismissed with prejudice.

16. A separate judgment will be entered.

Dated this 21st day of August, 2024.

BY THE COURT:

_____
John M. Gerrard
Senior United States District Judge